SIXTH DIVISION

No. 1-99-1163

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

)

)

REGGIE SMITH, ) Honorable

) John E. Morrissey,

Defendant-Appellant. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Reggie Smith, was convicted of first degree murder and sentenced to 30 years in prison.  Defendant appeals, arguing (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the court erred in admitting a videotape and transcript in which defendant admits his involvement in the crime; (3) the State made improper remarks during closing argument; and (4) the court erred in admitting gang-related evidence.  We reverse and remand for a new trial.

At trial, Roland Stephenson testified that at approximately 12:30 a.m. on September 19, 1996, he heard five or six gunshots outside his house at 8003 South Bennett in Chicago.  Stephenson looked out the front living room window and saw a body lying on the grass in between the sidewalk and the street.  Stephenson then saw a grey, four-door Chevy drive up and stop.  Two men exited the car.  One of the men walked over to the body on the ground, then he hurried back to the car and they drove off.

Officer Karen Green testified that she and her partner arrived at the scene shortly after 12:30 a.m.  Officer Green saw the victim, Aaron Sutton, lying face down on the grass with a bullet hole in the back of his head.   Officer Green contacted paramedics and preserved the crime scene.

Officer Joseph Bembynista, a forensic investigator, arrived at the scene at approximately 1 a.m.  He recovered five .45-caliber cartridge cases in the grass near the victim's body.

Doctor Eupil Choi testified that he conducted an autopsy on the victim and recovered five bullets from his body.  Doctor Choi opined that the victim died from multiple gunshot wounds and that the manner of death was homicide.

Tonia Brubaker, a forensic scientist specializing in firearms identification, testified that on September 24, 1996, she examined the five cartridge cases recovered at the scene and the five bullets recovered from the victim's body.  She determined that three of the bullets were fired from a .45 semi-automatic firearm.  Two of the bullets were fired from a revolver or .38 special.

Detective Peter Satriano testified that on December 16, 1996, a man by the name of Melvin Banks came in to the police station and handed him a videotape.  The videotape, which was admitted into evidence, showed defendant (nicknamed "Lightbulb") talking with another male, Brian Overall (nicknamed "Cornbread"). During their conversation, Cornbread states, "I didn't kill Aaron."  Defendant responds, "He's lying.  I was there.  I was the f---ing driver."

Defendant was subsequently taken into custody.  At 12:19 a.m. on December 20, 1996, defendant made a court-reported statement.  In the statement, defendant admits that at approximately 11 p.m. on September 18, 1996, he was at 139th and Michigan with three people, Brian Overall, "D," and "Red." Brian Overall and D were arguing about a previous incident in which the victim shot at Overall.  Overall and the victim were both members of the Gangster Disciples and the victim had been selling drugs on Overall's "turf."  During the argument, D stated that Overall was scared of the victim.  Overall then said to defendant, "Come on, Light, while I go take care of some business."  Overall threw his car keys to defendant, who went outside, started the car, and played the radio.

Overall subsequently walked outside and entered the driver's side of the car.  Defendant noticed that Overall had a gun on his right side. 

Overall drove them to the victim's neighborhood, where they saw a group of boys.  Overall said, "There he go," referring to the victim.  Overall drove one block over, stopped the car, then he exited the vehicle with his gun.  Defendant stated that he knew Overall was going to "take care of business," meaning shoot at the victim.  Overall walked towards the street where they had seen the victim.  

Meanwhile, defendant remained in the car, listening to the radio.  After about five minutes, defendant drove around the block.  As he was driving, defendant heard about seven gunshots, then he saw Overall running towards him while holding his gun behind his back. 

Defendant drove up to Overall, who entered the car.  Defendant drove up the street until Overall told him to slow down.   Overall opened the car door and defendant saw a bloody body lying on the ground.  Defendant then drove to 79th and Stoney Island, where he and Overall switched places in the vehicle.  Overall drove defendant to his house and he went to sleep. 

After defendant's statement was published to the jury, the court admitted into evidence a certified copy of vehicle records from the Secretary of State regarding a 1985 four-door Chevy Impala registered to Overall.  

Following closing arguments, the jury convicted defendant of first degree murder.  The court sentenced defendant to 30 years in prison.  Defendant filed this timely appeal.  

First, defendant argues the State failed to prove him guilty beyond a reasonable doubt of first degree murder based on a theory of accountability.  When presented with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).

Section 5-2(c) of the Criminal Code of 1961 provides that a person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."  720 ILCS 5/5-2(c) (West 1992).  Factors to consider in determining defendant's legal accountability include: defendant's presence during the commission of the offense, defendant's continued close affiliation with other offenders after the commission of the crime, defendant's failure to report the incident, and defendant's flight from the scene.  
People v. Taylor
, 164 Ill. 2d 131, 141 (1995).

Section 5-2(c) incorporates the "common design" rule, which provides, "'where two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts.'"  
People v. Terry
, 99 Ill. 2d 508, 514 (1984), quoting 
People v. Kessler
, 57 Ill. 2d 493, 496-97 (1974).  Evidence that defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another.  
People v. J.H.
, 136 Ill. 2d 1, 17 (1990).  

Here, defendant is legally accountable for Overall's conduct, as defendant voluntarily attached himself to Overall before the commission of the crime by accompanying Overall to the victim's neighborhood, knowing that Overall was armed with a gun and intended to shoot the victim.  Defendant's knowledge of Overall's criminal design is established by his court-reported statement that he heard Overall and D arguing about a previous incident where the victim shot at Overall.  Defendant heard D say that Overall was scared of the victim.  He heard Overall tell him, "Come on, Light, while I go take care of some business," and he saw that Overall was armed.  Defendant's legal accountability is also established by his continued close affiliation with Overall after the commission of the crime, his failure to report the incident, and his flight from the scene.

People v. Murray
, 254 Ill. App. 3d 538 (1993), is on point. In 
Murray
, defendant drove around with the two shooters until they located the victims.  When the two shooters exited the car, defendant drove the car a half block away and waited.  
Murray
, 254 Ill. App. 3d at 545.  Defendant heard multiple gunshots, then the two shooters ran back to the car and defendant drove away.  
Murray
, 254 Ill. App. 3d at 545.  The appellate court affirmed defendant's conviction of first degree murder on an accountability theory, holding that defendant's admission that he aided the shooters in locating the victims and drove them away from the crime scene was sufficient to establish defendant's guilt beyond a reasonable doubt.  
Murray
, 254 Ill. App. 3d at 548.

Similarly, in the present case, defendant drove around with Overall until they located the victim.  After Overall exited the car, defendant drove around the block until he heard gunshots and saw Overall running toward the car.  Defendant drove Overall to the victim's body and then away from the crime scene.  Defendant maintained a close affiliation with Overall before and after the crime, did not separate himself from Overall, and did not report the shooting.  As in 
Murray
, defendant's conduct was sufficient to establish his guilt beyond a reasonable doubt.

Defendant argues that 
People v. Perez
, 189 Ill. 2d 254 (2000), compels a different result.  In 
Perez
, our supreme court reversed defendant's conviction of first degree murder on an accountability theory, where defendant was merely present at the crime scene, knew of its commission and fled the scene.  
Perez
, 189 Ill. 2d at 268.  The supreme court held that such evidence was not sufficient to prove that defendant intentionally aided in or encouraged the crime's commission.  
Perez
, 189 Ill. 2d at 268.

By contrast, defendant here confessed that he accompanied Overall knowing that he was armed and intended to shoot the victim.  Defendant also drove Overall away from the crime scene. Defendant's conduct distinguishes this case from 
Perez
 and provides sufficient evidence that he intentionally aided in and encouraged the crime's commission.

Next, defendant argues that the State failed to establish a proper foundation for the admission into evidence of a videotape in which defendant discusses his involvement in the crime. Several Illinois cases have held that videotapes are admissible on the same basis as still photographs.  See, 
e.g.
, 
Barry v. Owens-Corning Fiberglas Corp.
, 282 Ill. App. 3d 199 (1996); 
People v. Mines
, 132 Ill. App. 2d 628 (1971). However, those cases are not entirely on point, as they involved only videotaped images, not any accompanying sound recordings.  

A case decided by the Michigan appellate court, 
People v. Heading
, 39 Mich. App. 126, 197 N.W.2d 325 (1972), is more directly on point.  In 
Heading
, the Michigan court held:

"A video tape is nothing more than a motion picture synchronized with a sound recording. Therefore, a complete video tape may be received into evidence if the offering party lays the foundation necessary to admit a motion picture and the foundation necessary to admit a sound recording."  
Heading
, 39 Mich. App. at 132, 197 N.W.2d at 329.

We adopt the 
Heading
 court's reasoning and hold that the complete videotape at issue here (
i.e.
, the motion picture plus the sound recording) was admissible only if the State laid the foundation necessary to admit a motion picture and the foundation necessary to admit a sound recording.

A sufficient foundation is laid for a motion picture when a witness with personal knowledge of the filmed object testifies that the film is an accurate portrayal of what it purports to show.  
Cisarik v. Palos Community Hospital
, 144 Ill. 2d 339, 342 (1991).  Here, Detective Satriano identified the individuals on the videotape as defendant and Brian Overall.  Detective Satriano testified that he knew the two men "from the neighborhood" and that he had previously arrested Brian Overall.  Detective Satriano's testimony was sufficient to establish a foundation for the admission of the motion picture portion of the videotape.

A sufficient foundation is laid for a sound recording when a party to the conversation testifies to the accuracy of the recording and the defendant makes no claim of any changes or deletions in the recordings.  
People v. Johnson
, 122 Ill. App. 3d 532, 540 (1984).  Where, as here, no party to the conversation testifies to the accuracy of the recording, a sufficient foundation may be laid by evidence as to (1) capability of the device for recording; (2) competency of the operator; (3) proper operation of the device; (4) preservation of the recording with no changes, additions, or deletions; and (5) identification of the speakers. 
People ex rel. City of Leland Grove v. Springfield
, 193 Ill. App. 3d 1022, 1041 (1990).

Here, there was no evidence as to the capability of the device for recording, the competency of the operator, the proper operation of the device, or the preservation of the recording with no changes, additions, or deletions.  Accordingly, the court erred in admitting the audio portion of the videotape (and accompanying transcript) into evidence.  

The State argues that the admission of the videotape was harmless, given defendant's court-reported statement in which he admitted his guilt.  We disagree.  Error cannot be harmless if a reasonable possibility exists that the incompetent evidence contributed to the conviction.  
People v. Barbour
, 106 Ill. App. 3d 993, 1002 (1982).  At trial, defense counsel raised the theory that some third person or persons unaffiliated with defendant or Overall shot the victim.  Defense counsel's theory was directly refuted by the videotape, in which defendant specifically identifies Overall as the killer.   Thus, a reasonable possibility exists that the videotape contributed to defendant's conviction; accordingly, we decline to apply the "harmless error" rule here, and instead reverse and remand for a new trial.

Our determination earlier in this opinion that the properly admitted evidence at trial was sufficient to find defendant guilty is not binding on retrial.  Rather, our consideration of the sufficiency of the evidence removes the risk that defendant would be subject to double jeopardy.  
People v. Taylor
, 76 Ill. 2d 289, 309-10 (1979).

Before concluding, we address an issue that may reemerge at retrial.  During closing arguments, the State argued that defendant acted as both a principal and an accomplice during the shooting.  The court later instructed the jury on both principal liability and accountability liability.  The State's argument and the instruction on principal liability were error; there was evidence that two guns may have been used at the crime scene, but there was absolutely no evidence at trial that defendant used a gun and was guilty as a principal.  The State's theory of the case and the evidence only supported a finding of guilt under an accountability theory.   

For the foregoing reasons, we reverse and remand for a new trial.  As a result of our disposition of this case, we need not address defendant's other arguments for reversal.

Reversed and remanded.

Campbell, P.J., and Gallagher, J., concurring.