SIXTH DIVISION

December 28, 2001

No. 1-00-1810

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) No. 98 CR 6588

)

WILLIAM METCALFE, ) Honorable

) James D. Egan,

Defendant-Appellant. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, William Metcalfe, appeals his convictions for, attempted armed robbery, attempted aggravated robbery and his sentence of 10 years in prison.  On appeal, defendant argues that: (1) the circuit court erred by denying his motion to quash arrest and suppress evidence; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) defendant was denied his right to a fair trial where one of the jurors indicated during 
voir
 
dire
 that she was unable to be fair and impartial; (4) the circuit court erred by failing to properly instruct the jury; and (5) the circuit court erred by denying defendant's requests for appointment of counsel to represent him on his posttrial motions and at sentencing.  We reverse and remand for a new trial.

At trial, Jerry Dudek testified that at about 3:30 p.m. on January 8, 1998, he was using an automatic teller machine (ATM) in the Citibank branch located at 222 West Adams when defendant approached him and asked for money.  Mr. Dudek said "no."  Defendant again asked for money.  Mr. Dudek again declined.  Defendant then brushed up against Mr. Dudek, stuck his left hand in his pocket, and said "I have got a gun.  I want your money." Mr. Dudek begged defendant not to hurt him.  Defendant responded by bumping Mr. Dudek and stating, "I want your f----ing money."  

Mr. Dudek screamed for help.  Defendant took a step back, then reached for Mr. Dudek's wallet, which was on a ledge underneath the ATM.  Mr. Dudek grabbed defendant's left arm and prevented him from taking the wallet.  Defendant then walked to a revolving door and attempted to exit the bank.  Mr. Dudek put his foot against the door and trapped defendant inside.

Several bank employees, including an armed security guard, reached the scene.  Mr. Dudek told them that defendant had tried to rob him.  One of the bank employees ran outside through another door and held the revolving door from that side, preventing defendant from escaping.  Mr. Dudek left for a work-related appointment and later spoke with Officer Halloran and signed a complaint against defendant.

Officer Halloran testified that at about 3:40 p.m. on January 8, 1998, he received a call of a robbery in progress at the Citibank at 222 West Adams. Upon arriving at the scene, Officer Halloran observed two people (including Mr. Dudek) detaining defendant in the bank's revolving door.  Officer Halloran also observed that defendant's left hand was in his left coat pocket.

Some of the people at the scene yelled that defendant had a gun.  Officer Halloran asked defendant to take his hand out of his pocket.  Defendant complied and exited the revolving door.  Officer Halloran then handcuffed him and conducted a pat-down search.  Officer Halloran found a sharpened meat cleaver in defendant's left coat pocket. 

Defendant testified that at about 3:40 p.m. on January 8, 1998, he approached Mr. Dudek at the ATM machine inside the Citibank and asked him for some change.  Mr. Dudek did not respond.  Defendant again asked for money.  Mr. Dudek grabbed defendant by the arm and yelled for security.  Defendant then attempted to leave the bank through the revolving door, but Mr. Dudek held onto the door and prevented him from leaving.   

A security guard rushed over with his gun drawn.  Defendant told the guard that he had done nothing wrong.  The police arrived shortly thereafter, and defendant explained to them that there had been a misunderstanding and that Mr. Dudek appeared to have been drunk.  

The officers handcuffed defendant, patted him down, and placed him under arrest.  As the officers were putting defendant into the squad car, they frisked him again and discovered a meat cleaver in his back pocket.  Defendant explained that he used the meat cleaver to scrape ice off windshields and to open pop cans. 

The jury found defendant guilty of, attempted armed robbery and, attempted aggravated robbery.  The circuit court merged the attempted aggravated robbery conviction into the attempted robbery conviction and, sentenced defendant to 10 years in prison.  Defendant filed this timely appeal.  

First, defendant argues that the circuit court erred by denying his pretrial motion to quash arrest and, suppress evidence based on lack of probable cause.  Probable cause to arrest exists where the facts and circumstances known to the police officer at the time of the arrest, are sufficient to warrant a person of reasonable caution to believe that an offense had been committed and that the offense was committed by the person arrested.  
People v. Sims
, 192 Ill. 2d 592, 614 (2000).  The existence of probable cause is determined by the totality of the circumstances at the time of the arrest.  
Sims
, 192 Ill. 2d at 615.  A determination of probable cause is governed by commonsense, practical considerations, and not by technical legal rules.  
Sims
, 192 Ill. 2d at 615.  Since both parties here accept the testimony of the arresting police officer, our standard of review is 
de
 
novo
.  
Sims
, 192 Ill. 2d at 615.

Officer Halloran testified at the hearing on the motion to suppress, that when he arrived at the scene, he observed defendant being "detained" in the revolving doors by a security guard and Mr. Dudek.  Several bank employees were screaming that defendant had a gun, and both Mr. Dudek and the security guard told Officer Halloran that defendant had tried to rob Mr. Dudek.  The security guard also told Officer Halloran that defendant claimed to have a gun in his pocket.  

Defendant argues that probable cause was lacking because Officer Halloran did not have a "first-hand" statement from the victim, Mr. Dudek, as to defendant's criminal behavior.  Defendant's argument is not well-taken because (as discussed above) Officer Halloran testified that Mr. Dudek made a statement at the scene that defendant had attempted to rob him.       

Defendant also argues that probable cause was lacking because Officer Halloran failed to inquire into the veracity and reliability of the security guard and the bank employees and otherwise failed to corroborate their statements as to defendant's attempt to rob Mr. Dudek.  In effect, defendant argues that Officer Halloran should have conducted a mini-trial at the bank, cross-examining the witnesses until defendant's guilt was proven beyond a reasonable doubt.  However, the evidence relied upon by the arresting officers does not have to be sufficient to prove defendant's guilt beyond a reasonable doubt (
Sims
, 192 Ill. 2d at 615); rather, as discussed above, the totality of the circumstances must be such as to warrant a person of reasonable caution to believe that defendant committed an offense.  Here, Officer Halloran was confronted with an identified victim and defendant, statements from bank employees as to defendant's possession of a gun, and a statement from both the victim and the bank security guard that defendant had tried to rob Mr. Dudek.  Under the totality of these circumstances, Officer Halloran had probable cause to arrest defendant, as a person of reasonable caution could believe that defendant had attempted to commit armed robbery.

Defendant argues that 
Illinois v. Gates
, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), and 
Recznik v. City of Lorain
, 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342 (1968), compel a different result.  In 
Gates
, the United States Supreme Court held that an informant's veracity is a relevant consideration in the totality of the circumstances analysis guiding probable cause determinations.  
Gates
, 462 U.S. at 230-34, 76 L. Ed. 2d at 543-45, 103 S. Ct. at 2328-30.  In 
Recznik
, the United States Supreme Court held that statements from unknown "people on the street" concerning defendant's alleged criminal activity was not sufficient to establish probable cause.  
Recznik
, 393 U.S. at 169, 21 L. Ed. 2d at 321, 89 S. Ct. at 344-45.

Neither 
Gates
 nor 
Recznik
 compels a result different from the one reached here, where Officer Halloran's information regarding defendant's criminal activity came, not from unknown people on the street, but from an identified victim and the bank security guard, and where defendant concedes that Officer Halloran had no reason to doubt the credibility of defendant's accusers.   

Next, defendant argues that the State failed to prove him guilty beyond a reasonable doubt.  When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Smith
, 321 Ill. App. 3d 669, 673 (2001).

The jury convicted defendant of attempted armed robbery.  A person commits an attempt when, "with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 1996).  A person commits armed robbery when he commits robbery (taking property from another by the use of force or by threatening the imminent use of force (720 ILCS 5/18-1(a) (West 1996)) while carrying on or about his person, or otherwise being armed with, a dangerous weapon.  720 ILCS 5/18-2(a)(West 1996)).  

Here, Mr. Dudek testified that defendant demanded his money, bumped him, told him he was carrying a gun, and attempted to grab his wallet.  Officer Halloran testified that defendant possessed a sharpened meat cleaver on his person.  Viewing the evidence in the light most favorable to the State, any rational trier of fact could find that defendant took a substantial step toward robbing Mr. Dudek while carrying a dangerous weapon on his person.  Accordingly, the State proved defendant guilty of armed robbery beyond a reasonable doubt.

Defendant argues that his conviction should be reversed because he never "physically manifested" the dangerous weapon (the meat cleaver) during the commission of the crime.  In 
People v. Addison
, 236 Ill. App. 3d 650 (1992), the First District Appellate Court rejected the argument that the weapon must be displayed during the commission of an armed robbery.  The court reasoned that the "plain language of the Criminal Code [of 1961 (Ill. Res. Stat. 1985, ch.38, par.18-2)]states that an armed robbery occurs when a person carries or possesses a dangerous weapon during a robbery.  The statute does not require that the dangerous weapon be displayed or used."  
Addison
, 236 Ill. App. 3d at 655.  We follow the well-reasoned opinion in 
Addison
 and hold that defendant was not required to display or use his dangerous weapon to sustain his conviction for attempted armed robbery.

Next, defendant argues that he was denied his right to a fair trial where one of the jurors indicated during 
voir
 
dire
 that she was unable to be fair and impartial.  Defendant waived review by failing to object at trial.  
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  However, because the issue affects the constitutional right to a fair trial, we consider defendant's contention under the plain error exception to the waiver rule.  See 134 Ill. 2d R. 615(a); 
People v. Wilson
, 303 Ill. App. 3d 1035, 1041 (1999).  

The federal (U.S. Const. amends. VI, XIV) and state constitutions (Ill. Const. 1970, art. I, §8) guarantee a criminal defendant the right to trial by an impartial jury.  This right is so basic that a violation thereof requires reversal.  
People v. Stone
, 61 Ill. App. 3d 654, 666-67 (1978).  An impartial jury is "'one made up of persons prepared to exercise their personal judgment, favoring neither prosecution nor accused, standing indifferent to both, and guided only by law and the evidence in the performance of their duties.'" 
Stone
, 61 Ill. App. 3d at 667, quoting 
People v. Hobbs
, 35 Ill. 2d 263, 270 (1966). Impartiality must be ascertained from the statements made by the prospective jurors.  
Stone
, 61 Ill. App. 3d at 667.   

The pertinent 
voir
 
dire
 examination of the juror is as follows:

"Q.  And you have not been an accused, complainant or witness in a criminal case?

A. I have not been an accused.  I have been a victim.

Q. That case go to trial?

A. I was robbed at gun point from my father's business.

Q. That's where you have been victim of a crime?

A. Yes. 

Q. You also have a family member or close friend who was victim of a crime?

A. My mother and father.

Q. The fact that you have been a victim and your mother and father have been victims, would that affect your ability to be fair and impartial in this case?

A. I hope not.

Q. You believe you could listen to the evidence and make a determination from the evidence on the witness stand?

A. Yes.

* * *

Q. Would anything affect your ability to be fair and impartial?

A. I would hope not.

Q. As I stated, you will listen to the evidence and make your determination based on what you hear from the witness stand?

A. Yes.

Q. Did you understand the concept of proof beyond a reasonable doubt and presumption of innocence?

A. Yes. 

* * * 

Q. And if at the end of all of the evidence, you felt that the State had proven its case beyond a reasonable doubt, would you have any problem signing a guilty verdict?

A. No.

Q. If on the other hand, you felt they had not, would you have any problems signing a not guilty verdict?

A. No.

* * * 

Q. *** [T]he case where you were a witness was someone caught? Was that case prosecuted?

A. I was witness and victim.  I positively identified him.  He got off because of a technicality.  

* * *

Q. *** [Y]ou said something about the person that you had identified or the person getting off on a technicality.  Does the result of that case in any way bias you as you would sit on this jury?

A. I would–I mean I would have to answer yes.

Q. Which way is that?

A. I believe that the legal system, you know, when he was clearly guilty from all the evidence but based on the way that the system is, it was based on the fact that he tried to discredit me as a witness based on how many feet and inches I was away from him when I identified him or how far away I was from the gun.  I felt that they gave–I felt like I was the victim in the crime.  I'm sorry.  He felt like he was the victim and I was the criminal.

Q. Would that affect your ability to be fair here?

A. Yes.  You ever had something like that to happen to you, it's hard not to feel that way."

The State argues that it was not error to seat the juror, as she stated that she understood the concept of proof beyond a reasonable doubt and presumption of innocence, and she further stated that she would listen to the evidence and make her determination based thereon.  The State's argument is not well-taken, as the juror subsequently clarified that her experience with the criminal justice system had biased her and affected her ability to be fair toward defendant.  The juror's explicit expressions of self-doubt concerning her ability to be impartial necessitate a reversal and remand for new trial.  See, 
e.g.
 
Stone
, 61 Ill. App. 3d at 667 (reversing and remanding for a new trial where several veniremen expressed self-doubt concerning their ability to be impartial).

The State argues that 
People v. Wilson
, 303 Ill. App. 3d 1035 (1999), compels a different result.  In 
Wilson
, the appellate court found no error during 
voir
 
dire
 where the trial court seated a juror who had stated that his relationships with several police officers and an attorney for the Fraternal Order of Police (FOP) would affect his ability to be fair and impartial.  
Wilson
, 303 Ill. App. 3d at 1039, 1041-43.  
Wilson
 is inapposite, as the juror was never asked nor did he explain how or why his relationships with the police and the FOP attorney would affect his ability to be fair and impartial, nor did he otherwise indicate any bias against defendant specifically.  By contrast, the juror here gave a detailed explanation as to the underlying reasons for her bias, 
i.e.
, that she had been the victim of an earlier crime but that the perpetrator "got off" because "the system" allowed the perpetrator to "discredit" her.  The juror stated that this experience with "the system" affected her ability to be fair.  The juror's statements clearly show a marked prejudice against defendant; accordingly, we reverse and remand for a new trial.

The State also cites 
People v. Bowman
, No. 1-99-3846 (September 28, 2001).  In 
Bowman
, the prospective juror stated during 
voir
 
dire
 that her mother and two sisters had been raped.  The juror answered "probably" when asked whether the rapes of her mother and sisters would cause her to be unfair to defendant (who was charged with aggravated criminal sexual assault).  
Bowman
, slip op. at 7.  Defense counsel did not ask that the juror be excused for cause based upon these answers, nor did counsel use a peremptory strike to remove the juror from the panel.  The circuit court seated the juror, and defendant was ultimately convicted.  On appeal, defendant argued that the trial court should have 
sua
 
sponte
 excused the juror or asked her more questions to rehabilitate her.  
Bowman
, slip op. at 18.  The appellate court disagreed, stating:

"We have found no case that holds, under circumstances similar to these, the trial court has a 
sua
 
sponte
 duty to ask a prospective juror more questions.  Still, its failure to do so is troubling.  Had defense counsel asked for further inquiry, and had the request been turned down, we would have a far different case."  
Bowman
, slip op. at 19.

The appellate court held that defendant waived review of the issue by accepting the juror "without complaint."  
Bowman
, slip op. at 19-20.  The appellate court further held that, even if the issue had not been waived, defendant failed to show that the juror was partial where the trial court specifically posed questions about fairness, impartiality, and willingness to follow the law and the juror did not "respond negatively" thereto.  
Bowman
, slip op. at 20.

The purpose of 
voir
 
dire
 is to assure the selection of an impartial panel of jurors free from bias or prejudice.  
People v. Williams
, 164 Ill. 2d 1, 16 (1994).  The primary responsibility for initiating and conducting the 
voir
 
dire
 examination lies with the trial judge, not with the attorneys.  
Williams
, 164 Ill. 2d at 16.  Our supreme court has stated that it is the "
trial
 
judge
 [who] is obliged to insure that, in fact, the defendant receives a trial before a fair and impartial jury. " (Emphasis added.)  
People v. Taylor
, 101 Ill. 2d 377, 387 (1984).  A trial judge defeats the purpose of 
voir
 
dire
 and fails to ensure that the defendant receives a trial before a fair and impartial jury when he seats a juror who expresses bias or prejudice and who has not been rehabilitated by further questioning.  We hold  that when a prospective juror indicates bias or prejudice and has not been rehabilitated and counsel fails to exercise a peremptory challenge or challenge her for cause, the trial judge has a 
sua
 
sponte
 duty to excuse the prospective juror.

The State argues that, as in 
Bowman
, the juror was rehabilitated here when the court questioned her about her ability to be fair and impartial.  We disagree.  In 
Bowman
, the trial judge posed questions about fairness, impartiality, and willingness to follow the law and asked the juror to respond negatively by raising her hand.  She did not do so.  
Bowman
, slip op. at 20. By contrast, the juror here equivocated when asked whether she could be fair and impartial:

"Q. The fact that you have been a victim and your mother and father have been victims, would that affect your ability to be fair and impartial in this case?

A. I hope not.

* * * 

Q. Would anything affect your ability to be fair and impartial?

A. I would hope not."

As discussed above, the juror subsequently explained that her experience with the criminal justice system had biased her and affected her ability to be fair toward defendant. Thus, unlike 
Bowman
, the juror was not rehabilitated.  

The State next cites the following cautionary statement made by the 
Bowman
 court: 

"It would be a bad idea to allow defendants to accept a questionable juror, proceed to trial, then, when things turn our badly, claim entitlement to reversal because that juror voted to convict.

By not giving the court the opportunity to prevent or correct errors at trial, a lawyer would gain the advantage of obtaining a reversal through an intentional failure to act, in effect, a free trial."  
Bowman
, slip op. at 19.

This analysis presupposes that the trial judge 
must
 accept a biased juror who has not been challenged by counsel. As discussed, though, the trial judge (not counsel) bears the responsibility of ensuring that defendant receives a fair trial; thus, when a prospective juror indicates bias or prejudice and has not been rehabilitated and counsel fails to exercise a peremptory challenge or challenge her for cause, the trial judge has the 
sua
 
sponte
 duty to excuse the prospective juror.  By exercising this duty, the trial judge negates any intentional failure to act on the part of counsel and ensures that the defendant receives a fair trial by an impartial jury.

Our holding is not meant as a criticism of the juror, nor should she think that she committed any error here; to the contrary, she should be commended for responding truthfully during 
voir
 
dire
 when asked about her ability to be fair and impartial. 

Our determination earlier in this order that the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt is not binding on retrial.  Rather, our consideration of the sufficiency of the evidence removes the risk that defendant would be subject to double jeopardy.  
People v. Taylor
, 76 Ill. 2d 289, 309-10 (1979).

For the foregoing reasons, we reverse and remand for a new trial.  As a result of our disposition of this case, we need not address defendant's other allegations of error.

Reversed and remanded.

O'MARA FROSSARD, J., specially concurs.    BUCKLEY, J., dissents.

JUSTICE O'MARA FROSSARD, specially concurring:

Evaluating expressions of bias or prejudice by potential jurors during 
voir dire
 is particularly fact specific and requires factual analysis on a case-by-case basis.  I agree that defendant's case should be reversed and remanded because he was denied a fair trial due to the court's failure to 
sua sponte
 excuse the juror in question.  However, I write separately because I do not believe our holding runs counter to 
People v. Bowman
, 325 Ill. App. 3d 411 (2001).  Rather, I believe the facts of this case distinguish it from 
Bowman
.

This case, unlike 
Bowman
, is not about whether the defendant received a fair and impartial jury trial in the context of equivocal expressions by  jurors of an inability to be fair.  This case is about whether the defendant received a fair trial where a juror clearly and unequivocally expressed an inability to be fair, but nonetheless served on the jury.  Unlike 
Bowman
, the expression of bias by the potential juror in this case was not equivocal, but clear.  That fact distinguishes this case from 
Bowman
 and the cases relied upon by 
Bowman
.  Under principles of fundamental fairness, that fact mandates the opposite conclusion from that reached in 
Bowman
, which concluded that the trial court acted within its discretion in refusing defense challenges to two jurors who gave equivocal answers regarding the ability to be fair.  
Bowman
, 325 Ill. App. 3d at 424.

Bowman
 further addressed the issue of the nature of the trial court's 
sua sponte
 duty to ask potential jurors additional questions during 
voir dire
.  After the juror in 
Bowman
 equivocated as to whether she could be fair, no further questioning occurred regarding that equivocal answer.  In the factual context of that case, 
Bowman
 stated: "We have found no case that holds, under circumstances similar to these, the trial court has a 
sua sponte
 duty to ask a prospective juror more questions.  Still, its failure to do so is troubling.  Had defense counsel asked for further inquiry, and had the request been turned down, we would have a far different case."  
Bowman
, 325 Ill. App. 3d at 425.

This case, unlike 
Bowman
, is not about whether the judge has a 
sua sponte
 duty to ask an equivocal juror additional questions during 
voir dire
.  We do not have the failure by the trial court to ask a prospective juror additional questions, which the 
Bowman
 court found troubling.  Rather, the record reflects that the trial judge in this case properly and thoroughly questioned the potential juror.  The issue here is whether the trial judge had a 
sua sponte
 duty to excuse a juror when that juror expressed unequivocally that she was biased and that her bias would affect her ability to be fair. 

The trial judge in a criminal case has the primary responsibility to conduct a 
voir dire
 that procures jurors free from bias or prejudice to provide defendant a trial before a fair and impartial jury.  
People v. Bowel
, 111 Ill. 2d 58, 64-65 (1986).  Pursuant to Supreme Court Rule 234 (134 Ill. 2d R. 234), made applicable to criminal cases by Rule 431 (134 Ill. 2d R. 431), the primary responsibility for both initiating and conducting the 
voir dire
 examination lies with the trial court, and the manner and scope of that examination remain in the discretion of the trial court.  
People v. Porter
, 111 Ill. 2d 386, 401 (1986).  Where, as here, neither party has exercised a peremptory challenge against a potential juror, the decision whether to accept the potential juror as an impartial trier of fact is discretionary with the trial judge.  
People v. Taylor
, 101 Ill. 2d 377, 386-87 (1984).  An abuse of discretion will be found only if, after a review of the record, it is determined that the conduct of the court thwarted the selection of an impartial jury.  
People v. Williams
, 164 Ill. 2d 1, 16 (1994).  In the present case the unequivocal answers provided by the juror during 
voir dire
 put the juror's impartiality squarely into question.

Trial counsel are advocates seeking a jury that will under the particular circumstances of the case be sympathetic to the position advocated.  It is the trial judge who has the primary responsibility of ensuring that defendant receives a fair trial.  Whether the judge's duty to excuse a prospective juror comes into play is determined by the factual context of each case.  The following factors should be taken into consideration in determining whether the judge should 
sua sponte
 excuse a prospective juror: (1) juror expresses unequivocal bias which would affect the ability of the juror to be fair; (2) there is no reason to doubt the credibility of that expression of bias; (3) the expression of an inability to be fair has not been rehabilitated; and (4) neither trial counsel exercises a peremptory challenge or challenge for cause regarding the potential juror.

In the factual context of this case, regarding the questionable juror, I believe that the record reflects an unequivocal expression of an inability to be fair; no reason to doubt the credibility of that expression; no rehabilitation of that expression; and no trial counsel challenge to the juror.  The right to a fair jury is the cornerstone of a criminal justice system which produces reliable results.  The trial judge is the gatekeeper of that jury with the duty to conduct a 
voir dire
 aimed at providing jurors free from bias or prejudice in order to maintain the integrity of the criminal justice system.

Under the specific facts of this case, where the potential juror expressed unequivocally that she was biased and that this bias would affect her ability to be fair, the trial judge had a 
sua sponte
 duty to excuse the juror based on the defendant's basic right under the federal and state constitutions to a fair trial by an impartial jury.  The failure to excuse the juror thwarted selection of an impartial jury and constituted an abuse of discretion.  

JUSTICE BUCKLEY, dissenting:

I thoroughly agree with the majority's findings that sufficient probable cause existed to arrest defendant and that the State proved him guilty beyond a reasonable doubt.  However, I cannot agree with its conclusion that defendant's conviction should be reversed because he was denied a fair trial due to the court's failure to 
sua sponte
 strike the juror in question.  Because I find 
People v. Bowman
 persuasive, I must dissent.

Our court, time and again has affirmed, that the extent and scope of 
voir dire
, and the determination of a prospective juror's ability to follow the law, lie soundly with the trial court and its decisions will not be reversed absent abuse of discretion.  See 
People v. Strain
, 194 Ill. 2d 467, 476 (2000); 
People v. Bowman
, 325 Ill. App. 3d 411, 424-25 (2001
).  Such abuse occurs only when the court has conducted itself in a manner that prevents selection of an impartial jury.  See 
People v. Williams
, 164 Ill. 2d 1, 16-17 (1994); 
Bowman
, 325 Ill. App. 3d at 425.

In 
Bowman
, the court conducted extensive 
voir  dire
 in a rape case of a prospective juror whose relatives had been raped.  When asked if this would cause her to be unfair, the prospective juror answered "probably."  
Bowman
, 325 Ill. App. 3d at 417, 524-25.  Defense counsel chose not to use his peremptory challenges to excuse her, and the court did not dismiss her for cause.  Thus, she was seated on the jury, which convicted the defendant.  

While finding that her response to the court's 
voir  dire 
questions were somewhat "troubling," the reviewing court declared that there was no reason to reverse the conviction.  
Bowman
, 325 Ill. App. 3d at 425.  First, it noted that even an equivocal response from a prospective juror does not mandate her dismissal for cause if, upon review of her entire 
voir dire
 examination, she also indicated that she would try to disregard her bias and follow the law.  See 
Bowman
, 325 Ill. App. 3d at 422-23.  Second, it declared that a trial court has no 
sua sponte
 duty in these situations to ask a prospective juror more questions or strike her for cause.  See 
Bowman
, 325 Ill. App. at 425.  This is for defense counsel, who, along with making considered decisions during jury selection, has various avenues open to him in challenging prospective jurors, including asking additional questions, challenging for cause and using peremptory challenges.  See 
Bowman
, 325 Ill. App. at 425.  A defendant who does not pursue these options and instead accepts such a juror without complaint cannot later attack her presence on the jury that convicted him.  See 
Bowman
, 325 Ill. App. 3d at 426.

In the instant case, it is clear to me that the trial court thoroughly examined the juror in question, prior to defense counsel inquiring even further.  The entire examination reveals that the juror stated she would listen to the evidence and make her judgment accordingly, that she understood the concept of reasonable doubt and that she would have no problem finding defendant not guilty if the State failed to prove its case.  As the majority notes
, she then answered some questions posed by defense counsel in an equivocal manner.  However, defense counsel did not ask that the juror be removed for cause and did not use a peremptory challenge to remove her from the panel.  Instead, he accepted her without complaint.

Perhaps, had defense counsel asked the court to conduct further inquiry and had it refused, a different situation would have arisen.  But as it stands, the juror here, as the juror in 
Bowman
, was not forced upon defendant, nor did the court conduct itself in any manner that prevented the selection of an impartial jury.  Therefore, it is my view that the trial court did not abuse its discretion in not dismissing the juror 
sua sponte
 for cause.  Moreover, I would clarify as well that I do not believe defendant was denied effective assistance of counsel during jury selection.  To succeed on such a claim, defendant must show that counsel's performance was objectively unreasonable and, but for his error, the result of the trial would have been different.  
Strickland v. Washington
,
 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 697-98, 104 S. Ct. 2052, 2064, 2068 (1984); 
People v. Enis
, 194 Ill. 2d 361, 376 (2000).  
 

Defense counsel's decision whether to use a peremptory challenge is a matter of strategy, and from the record, I do not believe defendant will be able to effectively prove that incompetence played a role here.  Moreover, even if he were so able, there was no indication of actual prejudice on the part of the juror against this particular defendant, nor in the trial itself, that would have changed the outcome.  As both the majority and I noted initially, the evidence against defendant was strong.  

For these reasons, I would adopt both the reasoning and decision of 
Bowman
 and, therefore, it is my opinion that defendant did receive a fair and impartial trial.  Accordingly, I would affirm his conviction.