(No. 93217.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIAM METCALFE, Appellee.

*Opinion filed December 5, 2002.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry, Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, William Metcalfe, was convicted of attempted armed robbery (720 ILCS 5/8—4, 18—2 (West

1998)) and attempted aggravated robbery (720 ILCS 5/8—4, 18—5 (West 1998)). The trial court thereafter merged the attempted aggravated robbery conviction into the attempted armed robbery conviction and sentenced defendant to a term of 10 years' imprisonment. Defendant appealed his conviction, claiming, *inter alia*, that he was denied his right to a fair trial when one of the members of his jury indicated during *voir dire* that she could not be fair and impartial.

The First District of the appellate court reversed defendant's conviction and remanded for a new trial, holding that the trial judge had a duty to *sua sponte* excuse the juror even though the defendant did not challenge the juror for cause or exercise one of his peremptory challenges. 326 Ill. App. 3d 1008. We granted the State's petition for leave to appeal (177 Ill. 2d R. 315(a)), and now reverse the appellate court's ruling.

The charges against defendant arose from an incident that occurred on January 8, 1998. At defendant's trial, the victim, Jerry Dudek, testified that defendant approached him while he was using an automated teller machine in the lobby of a Citibank branch in downtown Chicago. Defendant twice asked Dudek for money. Dudek refused to give defendant any money. Defendant then brushed against Dudek, stuck his hand into his pocket, and told Dudek that he had a gun and wanted Dudek's money. Dudek was scared and asked defendant not to hurt him. Defendant came closer to Dudek saying he wanted Dudek's money.

Dudek then yelled out for help, at which point defendant took a step back. Defendant tried to reach for Dudek's wallet, which was on the ledge of the automated teller machine. Dudek grabbed defendant's arm to prevent him from taking the wallet. Defendant threatened to kill Dudek, so Dudek released his grip on defendant's arm. Defendant ran toward the revolving

door to try to escape. Dudek, however, put his foot against the door so that defendant was trapped in the door. Several bank employees, including an armed security guard, then reached the scene. Dudek explained that defendant had a gun and had tried to rob him. One of the bank employees ran out of the bank through another door and held the revolving door from the outside to prevent defendant from escaping. Dudek then asked the employees to take his place holding the door. Dudek said he was in shock and wanted to leave, so he gave his business card to one of the employees and asked her to have the police call him. Dudek went to the police station approximately an hour later and signed a complaint.

Officer Timothy Halloran of the Chicago police department testified that he received a call around 3:40 p.m. on January 8, 1998, concerning a robbery in progress. Halloran arrived on the scene and saw defendant trapped in the revolving doors. Several people were yelling that defendant had a gun. The Citibank security guard told Halloran that defendant had tried to rob Dudek. Halloran asked defendant if he had a gun and defendant said "no." Defendant's left hand was in his pocket, so Halloran asked defendant to take his hand out of his pocket. Halloran then asked the people holding the doors to let the doors go so defendant could exit toward Halloran. Halloran handcuffed defendant and conducted a protective pat-down search. During the search, Halloran discovered a sharpened meat cleaver in defendant's pocket.

Halloran said that Dudek was holding the revolving door when he arrived on the scene, but he did not talk to Dudek at that time. A bank employee later handed Dudek's card to Halloran and told Halloran that Dudek had been very shaken up and had to go to an important meeting.

Defendant testified that on January 8, 1998, he was homeless and did odd jobs, such as washing windows and cars, to make money. On January 8, he approached Dudek, told Dudek that he was homeless and hungry, and asked him for change. When Dudek did not respond, defendant again asked Dudek for money. Defendant said that Dudek then grabbed him by the arm and called for security. Defendant tried to walk away but was caught in the revolving door. Defendant testified that a security guard arrived with his gun drawn. Defendant tried to explain that he had done nothing wrong. The police then arrived and defendant told the police there had been a misunderstanding. Defendant explained that the meat cleaver found in his pocket was a novelty item used to scrape ice off car windshields, to open cans and for eating and cooking.

As noted, the jury found defendant guilty and defendant appealed his conviction. On appeal, the appellate court held that Officer Halloran had probable cause to arrest defendant and held that the State had proven defendant guilty beyond a reasonable doubt. Nonetheless, the appellate court reversed defendant's conviction and remanded for a new trial, finding that defendant did not receive a fair trial by an impartial jury due to the presence of a certain juror, Grevus, on the jury that convicted defendant.

In reaching its decision, the appellate court noted that, during the jury *voir dire*, the trial court asked the following questions of prospective juror Grevus:

"COURT: And you have not been an accused, complainant or witness in a criminal case?

GREVUS: I have not been an accused. I have been a victim.

COURT: That case go to trial?

GREVUS: I was robbed at gunpoint from my father's business.

COURT: That's where you have been victim [*sic*] of a crime?

GREVUS: Yes.

COURT: You also have a family member or close friend who was victim [*sic*] of a crime?

GREVUS: My mother and father.

COURT: The fact that you have been a victim and your mother and father have been victims, would that affect your ability to be fair and impartial in this case?

GREVUS: I hope not.

COURT: You believe you could listen to the evidence and make a determination from the evidence on the witness stand?

GREVUS: Yes.

COURT: You have been party to a lawsuit that's no longer pending?

GREVUS: Right.

COURT: Would anything affect your ability to be fair and impartial?

GREVUS: I would hope not.

COURT: As I stated, you will listen to the evidence and make your determination based on what you hear from the witness stand?

GREVUS: Yes.

COURT: Did you understand the concept of proof beyond a reasonable doubt and presumption of innocence?

GREVUS: Yes.

\*\*\*

COURT: And if at the end of all the evidence, you felt that the State had proven its case beyond a reasonable doubt, would you have any problems signing a guilty verdict?

GREVUS: No.

COURT: If on the other hand, you felt they had not, would you have any problems signing a not guilty verdict?

GREVUS: No."

The State then questioned Grevus concerning the crime in which she was a victim. Grevus told the assistant State's Attorney that she was a "witness and victim" in that case. She further explained that she "positively identified [the perpetrator]" and that "[h]e got off because of a technicality."

Defense counsel also questioned Grevus as follows:

"DEFENSE COUNSEL: Miss Gervus [*sic*], in your response to the State's questions just a moment ago, you said something about the person that you had identified or the person getting off on a technicality. Does the result of that case in anyway bias you as you would sit on this jury?

GREVUS: I would—I mean I would have to answer yes.

DEFENSE COUNSEL: Which way is that?

GREVUS: I believe that the legal system, you know, when he was clearly guilty from all the evidence but based on the way that the system is, it was based on the fact that he tried to discredit me as a witness based on how many feet and inches I was away from him when I identified him or how far away I was from the gun. I felt that they gave—I felt like I was the victim in the crime. I'm sorry. He felt like he was the victim and I was the criminal.

DEFENSE COUNSEL: Would that affect your ability to be fair here?

GREVUS: Yes. You ever had something like that to happen to you, it's hard not to feel that way."

Defense counsel, however, then excused two other prospective jurors but did not excuse Grevus. One of those prospective jurors, Nolan, had never been an accused, complainant or witness in a criminal case, had not been a victim of a crime, did not have a family member or close friend that had been a victim of crime, and had not been a party to a lawsuit. Nolan indicated that she could be fair and impartial and understood the concepts of proof beyond a reasonable doubt and presumption of innocence. The other prospective juror excused by defense counsel, Nigan, had not been an accused, complainant or witness in a criminal case, but had been beaten and mugged and her car had been stolen. In addition, one of Nigan's friends had been raped. Nigan said, however, that the fact that she and a close friend had been crime victims would not affect her ability to be fair and impartial. Nigan also understood the concepts of proof beyond a reasonable doubt and presumption of innocence. Ultimately, defendant used five of his seven

available peremptory challenges to excuse potential jurors. See 134 Ill. 2d R. 434(d) (defendant in noncapital case has seven peremptory challenges).

The appellate court acknowledged that defendant had waived review of his objection to juror Grevus because he failed to object to her presence on the jury at trial. Nonetheless, the appellate court elected to consider defendant's claim under the plain error exception to the waiver rule (134 Ill. 2d R. 615(a)), because the issue affected defendant's constitutional right to a fair trial. The appellate court concluded that Grevus' response to defense counsel's questions "clarified that her experience with the criminal justice system had biased her and affected her ability to be fair toward defendant" and necessitated a reversal of defendant's conviction and remand for a new trial. 326 Ill. App. 3d at 1016. The appellate court held that "when a prospective juror indicates bias or prejudice and has not been rehabilitated and counsel fails to exercise a peremptory challenge or challenge her for cause, the trial judge has the *sua sponte* duty to excuse the prospective juror." 326 Ill. App. 3d at 1018.

The State now contends that the appellate court erred when it held that a trial court has a duty to strike a potentially biased or prejudiced juror *sua sponte*. Noting that defendant waived any objection to juror Grevus when he failed to challenge her, the State argues that the appellate court improperly applied the plain error exception in this case. The State maintains that the plain error exception does not apply because the evidence was not closely balanced and because the trial court could have cured the alleged error by sustaining a challenge to Grevus, had defense counsel made such a challenge. In any event, the State maintains that no error occurred in this case because a trial court does not have a duty to strike a potentially biased juror *sua sponte*.

There is no question that defendant waived his objec-

tion to juror Grevus when he failed to challenge her for cause or to use one of his peremptory challenges to excuse her. See *People v. Macri*, 185 Ill. 2d 1, 40 (1998) (defendant waives objection to juror if he fails to challenge juror for cause or by peremptory challenge). Nonetheless, we agree with the appellate court that the issue should be examined under the plain error exception to the waiver rule because the issue affects defendant's constitutional right to a fair trial. 134 Ill. 2d R. 615(a) (plain errors affecting substantial rights may be noticed even though not brought to trial court's attention).

Prior to the appellate court's decision in this case, no published decision in Illinois had held that a trial judge has a duty to strike any potentially biased juror *sua sponte* and that the failure to do so constitutes plain error. In support of its decision, the appellate court pointed to language in two decisions of this court, *People v. Williams*, 164 Ill. 2d 1 (1994), and *People v. Taylor*, 101 Ill. 2d 377 (1984). In *Williams*, we observed that the purpose of *voir dire* is to assure the selection of an impartial panel of jurors free from prejudice or bias. *Williams*, 164 Ill. 2d at 16. We further noted that the circuit court has the primary responsibility for both initiating and conducting the *voir dire* examination. *Williams*, 164 Ill. 2d at 16. In *Taylor*, we stated that "[a]lthough the decision to accept a potential juror as an impartial trier of fact is discretionary with the trial judge, the trial judge is obliged to insure that, in fact, the defendant receives a trial before a fair and impartial jury." *Taylor*, 101 Ill. 2d at 386-87. Based upon the foregoing language, the appellate court concluded that a trial court "defeats the purpose of *voir dire* and fails to ensure that the defendant receives a trial before a fair and impartial jury when he seats a juror who expresses bias or prejudice and who has not been rehabilitated by further questioning." 326 Ill. App. 3d at 1017. Upon review, however, we find that the appel-

late court has construed our language in *Williams* and *Taylor* too broadly.

At issue in both *Williams* and *Taylor* was whether the trial court had abused its discretion in allowing or denying certain challenges for cause. Thus, in *Taylor*, in stating that a trial judge is obliged to insure that a defendant receives a trial before a fair and impartial jury, we explained that where a "defendant was deprived of this right *** because of the denial of challenges for cause of individual jurors, his conviction must be reversed and he must receive a new trial." *Taylor*, 101 Ill. 2d at 387. In that case, we held that the trial court had erred in denying the defendant's challenges for cause of certain jurors. *Taylor*, 101 Ill. 2d at 395-96. Similarly, in *Williams*, we held that the trial court did not abuse its discretion when it granted the State's request to excuse a prospective juror for cause. *Williams*, 164 Ill. 2d at 16-17. We noted that the manner and scope of the *voir dire* examination lies within the discretion of the trial court. *Williams*, 164 Ill. 2d at 16. An abuse of the trial court's discretion will be found only if the conduct of the court thwarted the selection of an impartial jury. *Williams*, 164 Ill. 2d at 16. We concluded that the trial court's actions in that case did not impede the selection of an impartial jury. *Williams*, 164 Ill. 2d at 16-17.

Significantly, neither *Williams* nor *Taylor* addressed whether a trial court's duty to insure that a defendant receives a trial before a fair and impartial jury includes a duty to *sua sponte* strike a potential juror where that juror indicates some bias or prejudice. In fact, when faced with the converse situation, the Fifth District of the appellate court held that although the trial court's actions in that case did not require reversal of the defendant's conviction, the trial court should not have dismissed two potential jurors *sua sponte*. *People v. Beasley*, 251 Ill. App. 3d 872, 884 (1993). Moreover, prior to the appellate

court's decision in this case, another division of the First District of the appellate court declined to impose such a duty upon the trial court. See *People v. Bowman*, 325 Ill. App. 3d 411 (2001).

In *People v. Bowman*, 325 Ill. App. 3d 411, 417 (2001), the defendant had been charged with aggravated criminal sexual assault, aggravated kidnapping and kidnapping. The defendant was convicted and, on appeal, claimed that the trial court had abused its discretion when it failed to *sua sponte* excuse a prospective juror. *Bowman*, 325 Ill. App. 3d at 425. During *voir dire*, the prospective juror, Charlyn Leeper, told the trial judge that her mother and two of her sisters had been raped. *Bowman*, 325 Ill. App. 3d at 417. When the trial court asked Leeper if the rapes would cause her to be unfair in the defendant's case, Leeper responded, "Probably." *Bowman*, 325 Ill. App. 3d at 417. Defense counsel did not move to excuse Leeper at that time; however, defense counsel asked if he would be allowed to back strike Leeper if necessary. *Bowman*, 325 Ill. App. 3d at 419. The trial judge told defense counsel he could not back strike Leeper, but said he would include Leeper in the second panel of the venire so that defense counsel could ask her supplemental questions. *Bowman*, 325 Ill. App. 3d at 419-20. Following questioning of the second venire, defense counsel moved to dismiss Leeper for cause on the ground that she was involved in a pending lawsuit in another county. *Bowman*, 325 Ill. App. 3d at 420. The trial judge denied defense counsel's motion to strike Leeper for cause, stating that the fact that Leeper was involved in a pending lawsuit in another county did not automatically require her exclusion. *Bowman*, 325 Ill. App. 3d at 420. In the defendant's post-trial motion, the defendant's only claim of error with regard to Leeper was that the trial court erred in denying the defendant's motion to exclude Leeper for cause due to her involvement in a pending lawsuit. *Bowman*, 325 Ill. App. 3d at 421.

On appeal, however, the defendant claimed that the trial court abused its discretion when it failed to question Leeper further concerning her ability to be fair and impartial in light of the rapes of her mother and her sisters and when it failed to *sua sponte* dismiss her for cause. *Bowman*, 325 Ill. App. 3d at 425. The defendant claimed that he had been denied his right to a trial by an impartial jury. *Bowman*, 325 Ill. App. 3d at 422.

The appellate court rejected the defendant's claim that the trial court should have *sua sponte* excused Leeper when she said the rapes of her mother and sisters would "probably" cause her to be unfair in the defendant's case. *Bowman*, 325 Ill. App. 3d at 425. The court noted that any problems were created by defense counsel, who did not challenge Leeper for cause based upon her "probably" answer, nor did he use an available peremptory challenge to remove her from the jury. *Bowman*, 325 Ill. App. 3d at 425-26. The court stated:

> "In short, for reasons that are unclear to us, defense counsel decided to keep Leeper on the jury. The defendant cannot now complain about her presence in the jury box. It would be a bad idea to allow defendants to accept a questionable juror, proceed to trial, then, when things turn out badly, claim entitlement to reversal because that juror voted to convict.
>
> By not giving the court the opportunity to prevent or correct errors at trial, a lawyer would gain the advantage of obtaining a reversal through an intentional failure to act, in effect, a free trial." *Bowman*, 325 Ill. App. 3d at 426.

We find the appellate court's analysis in *Bowman* to be well taken. We decline to impose a duty upon a trial court to *sua sponte* excuse a juror for cause in the absence of a defendant's challenge for cause or exercise of a peremptory challenge. To hold otherwise would allow a defendant "two bites of the apple." A defendant could allow a juror such as Grevus, whose experience with the criminal justice system was not satisfactory, to sit on his

jury and gamble that the juror's bias was directed against the State and thus would work in his favor. Then, if convicted, the defendant could claim that the trial court erred in failing to strike the juror *sua sponte*. In addition, if a trial court strikes a juror *sua sponte* and the defendant is convicted, the defendant later could challenge his conviction on the ground that the trial court erred in striking the juror. As the Missouri Court of Appeals observed in holding that a trial court did not commit plain error in failing to *sua sponte* strike a questionable juror: " '[t]he rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process.' " *State v. Wright*, 30 S.W.3d 906, 914 (Mo. Ct. App. 2000), quoting *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. 1991).

We note that the appellate court in this case attempted to distinguish *Bowman* on the ground that the juror in *Bowman* had been rehabilitated when the juror did not respond negatively to questions about fairness, impartiality and willingness to follow the law, while Grevus equivocated concerning whether she could be fair and impartial. 326 Ill. App. 3d at 1018. We are not persuaded, however, by the appellate court's attempts to distinguish *Bowman*. Pursuant to the appellate court's reasoning in this case, a defendant could always claim that a juror had not been sufficiently rehabilitated, so that the trial court should have *sua sponte* excused that juror. In any event, we are not convinced that Grevus' responses are significantly distinguishable from the responses of Leeper. Although Grevus stated that her experience with the criminal justice system would affect her ability to be fair, Grevus also stated, in response to the trial court's initial questioning, that: she could listen to the evidence and make a determination from the

evidence on the witness stand; she understood the concept of proof beyond a reasonable doubt and presumption of innocence; she would have no problems signing a guilty verdict if the State proved its case beyond a reasonable doubt; and she would not have any problems signing a not-guilty verdict if the State did not prove its case beyond a reasonable doubt.

In sum, we hold that although a trial court certainly has the discretion to remove a juror *sua sponte* for cause (see *People v. Lucas*, 132 Ill. 2d 399, 425 (1989)), a trial court does not have a duty to do so. The trial court, therefore, did not commit plain error in allowing Grevus to sit on defendant's jury. In so holding, we note that we have reviewed those cases cited by defendant in support of the contrary result and do not find those cases persuasive.

For example, in *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997), although the court stated that the presiding trial judge has authority and responsibility to dismiss prospective jurors for cause either *sua sponte* or upon counsel's motion, the issue in that case concerned whether the trial court had improperly granted the State's motions to excuse four prospective jurors for cause.

In *Cox v. Turlington*, 648 F. Supp. 1553, 1557 (E.D.N.C. 1986), the court stated that it was the duty of the trial court, if not the parties, to disqualify a judge from placement as a juror because that judge had presided over defendant's arraignment. The gravamen of that decision, however, was that the judge was automatically disqualified from sitting as a juror at the defendant's trial by virtue of the fact that he had conducted a portion of the proceedings in the case. *Cox*, 648 F. Supp. at 1557.

Finally, in *Lacy v. State*, 629 So. 2d 688, 690 (Ala. Crim. App. 1993), the issue was whether the trial court had abused its discretion in excusing a juror who had not

been challenged by the State or defendant. In finding that the trial court did not abuse its discretion, the court stated that "it is the duty of the court to ascertain juror qualifications and to disqualify all jurors not possessing the necessary qualities." *Lacy*, 629 So. 2d at 690.

The preceding cases do not compel a different result in this case. In fact, we observe that the majority of jurisdictions addressing this issue have declined to impose a duty on the trial court to excuse a potential juror *sua sponte*. See *Cage v. McCaughtry*, No. 01—3245 (7th Cir. September 6, 2002) (prisoner could not obtain *habeas corpus* relief on ground that trial judge had obligation to dismiss juror for cause in the absence of objection to juror by either lawyer, as such a rule is not plausible interpretation of sixth amendment); *State v. Bravo*, 131 Ariz. 168, 639 P.2d 358 (App. 1981) (trial court not required to act *sua sponte*, even though it may do so, to strike prospective jurors where defendant failed to challenge jurors for cause); *People v. Bolin*, 18 Cal. 4th 297, 315, 956 P.2d 374, 387, 75 Cal. Rptr. 412, 425 (1998) ("this court has never imposed on the trial court an independent, affirmative obligation to excuse a prospective juror notwithstanding counsel's failure to exercise a peremptory challenge for that purpose"); *Whatley v. State*, 270 Ga. 296, 297, 509 S.E.2d 45, 49 (1998) (where defendant did not move to strike prospective jurors for cause, trial court did not err by failing to excuse jurors *sua sponte*); *People v. Wise*, 18 Mich. App. 21, 170 N.W.2d 487 (1969) (trial court did not err in failing to excuse juror *sua sponte* where defendant did not use peremptory challenge to excuse juror); *State v. Wright*, 30 S.W.3d 906 (Mo. App. 2000) (trial court did not commit plain error in failing to *sua sponte* remove three venire members for cause); *Stewart v. State*, 757 P.2d 388 (Okla. Crim. App. 1988) (no error where trial court failed to *sua sponte* excuse juror where defendant failed to object to juror

during *voir dire*); *Delrio v. State*, 866 S.W.2d 304 (Tex. Ct. App. 1993) (in absence of challenge by defendant, trial court did not err in allowing admittedly biased venireman to serve on defendant's jury); *State v. Williams*, 237 Wis. 2d 591, 614 N.W.2d 11 (App. 2000) (party that fails to request further questioning and does not object to seating of juror cannot later allege error in trial court's failure to remove juror *sua sponte*).

Ultimately, a trial court abuses its discretion in the conduct of *voir dire* only if a review of the record reveals that the trial court's conduct thwarted the selection of an impartial jury. *Williams*, 164 Ill. 2d at 16-17. As the State argues in its brief, the trial court in this case did not thwart the selection of an impartial jury. The trial court did not restrict the scope of defense counsel's questioning of Grevus, did not prevent defense counsel from challenging Grevus for cause, did not deny a challenge for cause, and did not prevent defense counsel from using an available peremptory challenge to excuse Grevus. Consequently, the trial court did not abuse its discretion in this case. The appellate court, therefore, erred in reversing defendant's conviction and remanding for a new trial on the basis that the trial court should have excused Grevus *sua sponte*.

Defendant next argues that even if the trial court did not have a duty to excuse Grevus *sua sponte*, defendant was denied the effective assistance of counsel when his trial attorney failed to challenge Grevus. Defendant therefore contends that the appellate court's decision reversing defendant's conviction can be affirmed on the ground that defendant was denied his sixth amendment right to the effective assistance of counsel. Defendant notes that he raised this issue in the appellate court, but the appellate court did not reach the issue due to the disposition of the case.

In *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed.

2d 674, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test for judging ineffectiveness of counsel claims. Under that test, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness" and must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068.

The Supreme Court also has recognized, however, that there are certain "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 667, 104 S. Ct. 2039, 2046 (1984). Such circumstances include where there was the "complete denial of counsel," where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and where counsel is called upon to render assistance under circumstances where competent counsel very likely could not do so. *Cronic*, 466 U.S. at 659-62, 80 L. Ed. 2d at 668-70, 104 S. Ct. at 2047-49. Presumably claiming that defense counsel failed to subject the prosecution's case to meaningful adversarial testing, defendant argues that allowing an actually biased juror to serve on the jury and determine his fate is so inherently prejudicial that prejudice must be presumed in this case under *Cronic*.

We find no merit to defendant's claim that prejudice must be presumed in this case. The Supreme Court recently explained that "[w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97, 152 L. Ed. 2d 914, 928, 122 S. Ct. 1843, 1851 (2002). Thus, the Court in *Bell* rejected a defendant's claim his case was one in which prejudice

must be presumed. The Court stated that "respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind." *Bell*, 535 U.S. at 697, 152 L. Ed. 2d at 928, 122 S. Ct. at 1851.

In this case, as in *Bell*, defendant does not contend that his counsel failed to oppose the prosecution throughout the *voir dire* proceeding as a whole, but that his counsel failed to do so with regard to juror Grevus. In fact, defense counsel did exercise five peremptory challenges. Consequently, any alleged failure to test the prosecution's case here was not complete, as required under *Cronic*. We therefore review defendant's claim of ineffective assistance of counsel under the *Strickland* standard.

As noted, to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show both that his counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness and that the deficient performance so prejudiced defendant as to deny him a fair trial. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. With regard to the first prong, judicial scrutiny of a counsel's performance is highly deferential so that a defendant claiming ineffective assistance of counsel must overcome a strong presumption that the challenged actions of counsel were the product of sound trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

In *Bowman*, the appellate court held that the decision to exercise an available peremptory challenge is a strategic one, and further held that the defendant had failed to show that his counsel's decisions "questionable

as they might be, were not tactical and a matter of jury selection strategy." *Bowman*, 325 Ill. App. 3d at 428. We agree that defense counsel's conduct during jury *voir dire* involves matters of trial strategy that generally are not subject to scrutiny under *Strickland*. See *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) ("counsel's strategic choices are virtually unchallengeable"). As in *Bowman*, we cannot say that counsel's actions in this case were not tactical or matters of jury-selection strategy. Defense counsel did challenge five potential jurors. For example, defense counsel did excuse potential jurors Nolan and Nigan, both of whom were members of the jury panel that included Grevus. It certainly is possible that defense counsel considered that the bias toward the system expressed by Grevus due to the handling of her case might be directed against the State rather than the defendant. In any event, given defense counsel's challenge to two other members of the jury panel that included Grevus, we find that defense counsel's decision to accept Grevus was a matter of trial strategy.

Finally, even if we were to assume that defense counsel's actions were not objectively reasonable, defendant's claim of ineffective assistance of counsel may be disposed of on the ground that the defendant suffered no prejudice from the alleged error. See *People v. Johnson*, 128 Ill. 2d 253, 271 (1989) (ineffective assistance of counsel claims can be disposed of on ground that defendant suffered no prejudice without deciding first prong of *Strickland*). In order to show prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Here, the appellate court found, and we agree, that the evidence was more than sufficient to prove defendant guilty beyond a reasonable doubt. Moreover, there is absolutely no evidence that Grevus' bias against the system was

directed at defendant and not the State. Consequently, we cannot say that the result of the proceedings would have been different if Grevus had not served as a juror at defendant's trial.

For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*