NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180010-U

NO. 4-18-0010

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| STEVEN M. McFADDEN, | ) | No. 16CM5 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding defendant was not denied the effective assistance of counsel where trial counsel failed to strike a juror who grew up with the father of one of the State's witnesses and knew that witness her entire life.

¶ 2    A jury found defendant, Steven M. McFadden, guilty of violation of an order of protection (720 ILCS 5/12-3.4(a) (West 2014)), and the trial court sentenced him to 364 days in jail.

¶ 3    On appeal, defendant argues he was denied his constitutional right to the effective assistance of counsel because trial counsel failed to strike a juror "who had a long-standing personal relationship with the complainant." We affirm.

¶ 4                    I. BACKGROUND

¶ 5                    A. The Charge

¶ 6　　　　　In January 2016, the State charged defendant with violation of an order of protection (720 ILCS 5/12-3.4(a) (West 2014)), alleging he knowingly committed an act prohibited by a valid order of protection—contacting Debra Swann by telephone—after he had been served with notice of the contents of the order.

¶ 7　　　　　　　　　　　　　　B. Jury Trial and Sentence

¶ 8　　　　　On October 10, 2017, defendant's case proceeded to a jury trial.

¶ 9　　　　　　　　　　　　　　　1. *Voir Dire*

¶ 10　　　　　During *voir dire*, the trial court asked the prospective jurors whether they knew any of the State's witnesses, and the following exchanges occurred:

　　　　　"THE COURT: *** Miss Bergschneider, who do you know?

　　　　　PROSPECTIVE JUROR BERGSCHNEIDER: I'm an emergency room physician, or employee, so I remember [Officer] Poore the most, but all of their names sound familiar.

　　　　　THE COURT: Okay. Is there anything about knowing any of those individuals that would prohibit you from being fair and impartial in this case?

　　　　　PROSPECTIVE JUROR BERGSCHNEIDER: I only know him in the line of work.

　　　　　THE COURT: And the fact that you know him in the line of work, if they would testify, would they get any special treatment from you, or would you judge their testimony more credible than someone else?

　　　　　PROSPECTIVE JUROR BERGSCHNEIDER: I respect all of them. I—

　　　　　THE COURT: Okay. If you had to render a verdict that was against, perhaps, the side they testified for, would that cause you problems professionally?

PROSPECTIVE JUROR BERGSCHNEIDER: No.

THE COURT: If you saw them again in the line of work, you would not have to justify your verdict to them?

PROSPECTIVE JUROR BERGSCHNEIDER: I don't believe so, no.

THE COURT: Okay. Mr. Dennis, who do you know, sir?

PROSPECTIVE JUROR DENNIS: Debra Swann.

THE COURT: And how do you know Debra Swann?

PROSPECTIVE JUROR DENNIS: I grew up with her dad. I went to school with him. I've known her her whole life.

THE COURT: Is there anything about that that would make it difficult for you to sit on this case?

PROSPECTIVE JUROR DENNIS: No.

THE COURT: You could judge her testimony the same as anyone else?

PROSPECTIVE JUROR DENNIS: Yes.

THE COURT: And if you were to render a verdict that was against, perhaps, the side she is testifying for, that wouldn't cause you any problems?

PROSPECTIVE JUROR DENNIS: No.

THE COURT: Thank you, sir. Miss Nelson?

PROSPECTIVE JUROR NELSON: I don't know the Poore, *per se*, but he is engaged to my cousin's daughter.

THE COURT: Okay. Is there anything about that that would give him a special advantage in this case, his testimony?

* * *

PROSPECTIVE JUROR NELSON: Oh, no. Sorry."

Trial counsel used peremptory challenges to strike Bergschneider and Nelson, but counsel did not strike Dennis, who ultimately was impaneled on the jury.

¶ 11                    2. *The Evidence Presented*

¶ 12                    a. Adam Potter

¶ 13         Adam Potter was a patrol sergeant with the Morgan County Sheriff's Office. Potter testified that his job occasionally required him to assist in "serving civil process." On the evening of December 29, 2015, an officer with the Jacksonville Police Department informed Potter that he was with defendant at Debra Swann's house. The officer notified Potter because the officer knew that Potter had been attempting to serve defendant with an order of protection. Potter proceeded to Swann's house and, upon arriving, observed defendant "standing in the middle of the street, screaming, throwing his arms up in the air ***." Potter approached defendant, placed the order of protection in his hand, and informed him that he had been served with notice of the order. The order was admitted into evidence without objection. The order, issued on December 7, 2015, prohibited defendant from, in relevant part, contacting Swann by telephone, and it remained in effect until December 7, 2016. Defendant refused to sign a document acknowledging receipt of the order, claiming it had not been served in a timely manner, but Potter informed him that his refusal to sign did not nullify the service.

¶ 14                    b. Debra Swann

¶ 15         Debra Swann testified that she had previously been in a relationship with defendant for approximately one year. On December 7, 2015, Swann applied for, and was granted, an order of protection against defendant. Swann testified that on December 29, 2015, defendant showed up at her house, so she called the police. Swann stated that a single police

officer initially arrived, followed by a second officer with "the County." Swann observed the officers interact with defendant, and then defendant left. At some point after defendant and the officers departed, Swann began receiving telephone calls from an unknown number. She estimated that she received "at least 50" calls from the unknown number. Swann did not answer the calls because she believed the caller was defendant. The caller left numerous voice messages, and Swann listened to them. She testified that after listening to the messages she was certain the caller was defendant because she had spoken to defendant on the telephone "hundreds of times." Swann testified that in one of the messages defendant stated "he didn't give a f*** if he had an order of protection and that he was walking and he was on his way." Alarmed by this message, Swann called the police. The police responded to Swann's call and stayed at her house for approximately 20 minutes.

¶ 16                                    c. Luke Poore

¶ 17            Luke Poore was a police officer with the Jacksonville Police Department. Poore testified that on the night of December 29, 2015, "dispatch advised [him] to meet with Miss Swann about the possible violation of an order of protection." When Poore arrived at Swann's house, she explained to him that defendant had just been served with an order of protection and continued to call her after being served. Poore listened to the voice messages and described the speaker as very "emotional, hysterical, distraught ***." He testified that the caller said "[s]omething along the lines of[,] [']I know I'm violating the f***[']—and then it became sort of inaudible or mumbled." After Swann informed Poore who was leaving the messages, Poore contacted defendant by telephone and asked to meet with him. On January 5, 2016, defendant voluntarily met with Poore at the police station. Poore informed defendant of his rights and defendant agreed to speak with Poore without an attorney present. Poore testified that during the

conversation defendant "acknowledged that he had made the phone calls after being served the order of protection." On cross-examination, Poore testified that he only asked defendant one time whether he had called Swann after being served with the order of protection. He also stated that he did not recognize the voice from the messages.

¶ 18                                         d. Defendant

¶ 19        Defendant testified that he went to Swann's house on the evening of December 29, 2015. Swann came outside and talked to him for approximately 15 minutes, at which point a police officer arrived. Shortly after the responding officer's arrival, Officer Potter arrived. Defendant spoke with Potter and "told him that I'd take his paper but I didn't really care, because I had no prior knowledge to that that [*sic*] there was even a court date and that it existed, so I'd take it, but I was going to have my day in court." On cross-examination, defendant denied calling Swann after he had been served with the order. As for defendant's version of the conversation with Poore at the police station, he testified, "I told Officer Poore no, I did not make those phone calls, numerous times, and then Officer Poore said well, I know you made those phone calls, and I told him if I told him yes if I could get out of there quickly and just get this process on the road, since he would not take no for an answer."

¶ 20                                   3. *Verdict and Sentence*

¶ 21        Following presentation of the evidence, the jury found defendant guilty. On January 2, 2018, the trial court sentenced him to 364 days in jail.

¶ 22        This appeal followed.

¶ 23                                      II. ANALYSIS

¶ 24        Defendant argues trial counsel was ineffective for failing to strike a juror "who had a long-standing personal relationship with the complainant." We review this claim *de novo*.

See, *e.g.*, *People v. Hale*, 2013 IL 113140, ¶ 15, 996 N.E.2d 607; *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 66, 25 N.E.3d 82.

¶ 25　　　　To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient, meaning it fell below an objective standard of reasonableness under prevailing professional norms. *People v. Manning*, 241 Ill. 2d 319, 326-27, 948 N.E.2d 542, 546-47 (2011). "To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). Counsel's actions during jury selection are considered a matter of trial strategy and are therefore "virtually unchallengeable." *Manning*, 241 Ill. 2d at 333.

¶ 26　　　　Second, the defendant must show prejudice. *Evans*, 186 Ill. 2d at 93. Prejudice is established by proving "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220, 808 N.E.2d 939, 953-54 (2004). The supreme court has found, in the same context as the instant case, that a defendant cannot show prejudice when the evidence presented at trial was "more than sufficient" to prove the defendant guilty. *People v. Metcalfe*, 202 Ill. 2d 544, 562, 782 N.E.2d 263, 275 (2002). Finally, "if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient." *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003).

¶ 27        Here, defendant maintains that he suffered prejudice from Dennis serving as a juror because Dennis "was unfairly biased in favor of Swann, leading him to find [defendant] guilty due to this bias, rather than due to the State's meeting its burden of proof." We disagree. Initially, we note defendant's conclusory allegation that Dennis "was unfairly biased in favor of Swann" is not supported by the record. As previously mentioned, the trial court had the following exchange with Dennis:

> "THE COURT: Okay. Mr. Dennis, who do you know, sir?
>
> PROSPECTIVE JUROR DENNIS: Debra Swann.
>
> THE COURT: And how do you know Debra Swann?
>
> PROSPECTIVE JUROR DENNIS: I grew up with her dad. I went to school with him. I've known her her whole life.
>
> THE COURT: Is there anything about that that would make it difficult for you to sit on this case?
>
> PROSPECTIVE JUROR DENNIS: No.
>
> THE COURT: You could judge her testimony the same as anyone else?
>
> PROSPECTIVE JUROR DENNIS: Yes.
>
> THE COURT: And if you were to render a verdict that was against, perhaps, the side she is testifying for, that wouldn't cause you any problems?
>
> PROSPECTIVE JUROR DENNIS: No."

Nothing in this exchange suggests that Dennis was in fact "unfairly biased." Dennis indicated he would judge Swann's testimony the same as anyone else, and we do not find this assertion unbelievable simply because Dennis went to school with Swann's father and had known Swann since she was born.

¶ 28        Moreover, the evidence was "more than sufficient" to prove defendant guilty of violation of an order of protection. See *Metcalfe*, 202 Ill. 2d at 562 (finding the defendant suffered no prejudice from counsel's failure to strike a biased juror because "the evidence was more than sufficient to prove [the] defendant guilty beyond a reasonable doubt"). The State had to prove four essential elements: (1) defendant contacted Swann by telephone, (2) an order of protection prohibited him from doing so, (3) the order was valid, and (4) defendant had been served with notice of the contents of the order when he contacted Swann. 720 ILCS 5/12-3.4(a) (West 2014). Defendant does not dispute that the State proved the latter three elements. Instead, he argues only that the State could not have proved the first element without Swann's testimony, and Dennis was "unfairly biased in favor of Swann." However, Officer Poore testified that he listened to the messages on Swann's phone and heard an "emotional, hysterical, distraught" voice say "[s]omething along the lines of[,] [']I know I'm violating the f***[']—and then it became sort of inaudible or mumbled." Poore further testified that defendant acknowledged calling Swann after he had been served with the order. Additionally, although he said he felt compelled to do so, defendant admitted that he told Poore he had called Swann after being served with the order. Given this evidence, along with Dennis's assertion that he would judge the witnesses' testimony impartially, we cannot say that Dennis's service on the jury rendered defendant's conviction unreliable or fundamentally unfair and we need not analyze trial counsel's performance. See *Graham*, 206 Ill. 2d at 476.

¶ 29        Accordingly, we conclude defendant was not denied his constitutional right to the effective assistance of counsel.

¶ 30                                III. CONCLUSION

¶ 31        For the reasons stated, we affirm the trial court's judgment.

¶ 32          Affirmed.