2022 IL App (1st) 210688-U

No. 1-21-0688

Order filed December 30, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 3643 |
| | ) | |
| FREDERICK SMITH, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Second-stage dismissal of defendant's postconviction petition affirmed, where he failed to make a substantial showing of a constitutional violation to support his claims that counsel failed to (1) investigate whether the victim's death was a result of medical malpractice, and (2) remove a prospective juror for lying under oath during *voir dire*.
Also, any error by postconviction counsel in filing a compliant certificate under Illinois Supreme Court Rule 651(c) was harmless because the record demonstrates that counsel fulfilled his obligations under that rule.

¶ 2 The circuit court dismissed defendant Frederick Smith's *pro se* petition for postconviction relief at the second stage of the proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant contends that he made a substantial showing that (1) trial counsel rendered ineffective assistance by failing to investigate whether the victim's death was a result of the intervening cause of medical malpractice, and (2) appellate counsel rendered ineffective assistance by failing to raise trial counsel's failure to challenge the trial court's failure to remove a prospective juror for lying under oath during *voir dire*. In the alternative, defendant asks this court to remand for second-stage proceedings with orders for appointment of new counsel because postconviction counsel filed a defective certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and provided unreasonable assistance.

¶ 3 For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5 After a jury trial, defendant was convicted of first degree murder and sentenced to 55 years' imprisonment following the fatal shooting of Lamar Goodwin.

¶ 6 During pretrial proceedings, the State moved *in limine* to preclude the defense from referencing the wrongful death lawsuit that the victim's family had filed against the hospital that had provided emergency treatment to the victim after the shooting. The State argued that the civil suit was not relevant to defendant's guilt or innocence. The defense objected and argued that the

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

lawsuit was probative of the Goodwin family's bias and motive to testify falsely in their attempt to profit from the victim's death. The trial court granted the State's motion *in limine*.

¶ 7 The evidence presented at the trial showed that on May 7, 2006, at about 7 p.m., defendant encountered the victim, a long-time acquaintance, outside a public housing building in Chicago. Defendant and the victim argued, which attracted the attention of the victim's sister, Tanisha Goodwin, and their cousin, Lenwood Thomas. Both Tanisha and Lenwood knew defendant and were standing outside the building at the time of the incident. Tanisha and Lenwood observed defendant point a silver gun at the victim, fire the gun, and flee from the area. Tanisha went to the victim, who told her that defendant shot him. Meanwhile, Oscar Goodwin, who was the brother of the victim and Tanisha, was approaching the building. Oscar heard the gunshot and observed defendant, with whom Oscar was acquainted, run from the scene with his hand concealed under his T-shirt. Oscar approached the victim, who told Oscar that defendant had shot him.

¶ 8 The victim was conscious when he was admitted to the hospital. Blood was collecting in his abdomen, which necessitated emergency surgery. His condition did not improve following surgery, and he remained hospitalized in a medically induced coma until he died about three months later. The autopsy revealed that one bullet entered at the victim's left hip, traveled left to right and downward, and resulted in the fracturing of the victim's pelvic bone. The bullet was recovered behind the victim's femur. The medical examiner concluded that the victim died as a consequence of a gunshot wound to the hip and classified the manner of death as a homicide.

¶ 9 Following the shooting, Tanisha spoke to police officers investigating the incident, but did not identify defendant as the individual she observed shoot the victim. Tanisha explained that

Oscar had told her not to reveal defendant as the shooter because Oscar planned to handle the matter by retaliation. Neither Oscar nor Lenwood spoke to the police immediately following the shooting. Shortly thereafter, however, family members convinced Oscar to let the police handle the matter. On May 18, 2006, Oscar told detectives that he observed defendant running away from the scene shortly after the shooting. On June 8, 2006, Oscar, Tanisha, and Lenwood told the authorities everything they knew about the shooting. Detective Chris Matias learned from his interview with Tanisha that Natasha Jackson had also witnessed the shooting. Detective Matias arranged to speak to Natasha later that day. On June 10, 2006, Oscar, Tanisha and Lenwood spoke to an Assistant State's Attorney (ASA). Defendant was arrested on June 14, 2006.

¶ 10    Natasha Jackson was a long-time acquaintance of defendant, the victim, and the victim's family. Natasha's sister, who was incarcerated, was the mother of Oscar's two children. When the shooting occurred, Natasha was riding a bicycle with a friend. Natasha testified that she heard the gunshot and observed the victim fall to the ground. She did not speak to the police that day. Sometime thereafter, Natasha heard that the police were interested in talking to her. She contacted Tanisha, who told her to contact Oscar.

¶ 11    According to Natasha, when she met Oscar on June 8, 2006, he offered her $1000 and asked her to tell the detectives that she observed defendant shoot the victim even though she did not witness the shooting and had not observed defendant in the area at the time of the shooting. Natasha declined the money Oscar offered but countered that she would implicate defendant in the shooting if Oscar would give Natasha's mother custody of his two children. Oscar, in turn, instructed Natasha to tell the police that she saw defendant shoot the victim with a revolver, hide

the gun under his shirt, and flee in the direction of 13th Street. Oscar also instructed Natasha to tell the police that Lenwood witnessed the shooting. Oscar, however, denied that he offered Natasha or her family custody of his children in exchange for Natasha providing a statement against defendant.

¶ 12    Natasha testified that when she met with the police later on June 8, 2006, she told them what Oscar had instructed her to say. When she went to the police station of June 10, 2006, she spoke to an ASA and again repeated what Oscar told her to say. Natasha testified that she was drunk and high when she spoke to the authorities and implicated defendant in the shooting. Natasha was subpoenaed to testify before a grand jury in January 2007, but ultimately never testified because she advised an ASA that she had been offered money to speak to police and that her prior statement was a lie. Natasha also testified that, after she provided her initial statement implicating defendant, one of his friends approached her on the street and gave her a blank "affidavit paper" that was already notarized. Natasha took the document home, completed it, and gave it to defendant's friend when she saw him the next day. In the affidavit, Natasha disavowed her prior statements implicating defendant and indicated that law enforcement officials pressured her to say that she witnessed the shooting.

¶ 13    Detective Matias and ASA Maryanna Planey both testified as rebuttal witnesses on behalf of the State. They both denied that Natasha appeared intoxicated or high when she spoke to them and provided statements identifying defendant as the individual who shot the victim. ASA Planey further testified that Natasha made several corrections to the statement Planey had transcribed to more accurately reflect what Natasha said. In addition, Natasha also told Planey that the detectives

had treated her well and expressly denied that anyone had promised her anything in exchange for her statement.

¶ 14 The jury found defendant guilty of first degree murder and also found that he personally discharged a firearm that proximately caused the victim's death.

¶ 15 Prior to sentencing, defendant filed a *pro se* motion for a new trial and to dismiss his attorney. Defendant argued that trial counsel was ineffective for, *inter alia*, failing to object to the State's motion *in limine* to bar the defense from mentioning the Goodwin family's pending wrongful death lawsuit against the hospital where the victim had died. Defendant also argued that counsel failed to adequately investigate the exact cause of the victim's death.

¶ 16 At a subsequent court date, the trial court considered the allegations of ineffectiveness included in defendant's *pro se* filing and questioned defense counsel about various facets of her representation. Regarding the State's motion *in limine* to bar any reference to the Goodwin family's wrongful death lawsuit, defense counsel responded that she did object to that motion and cited the trial court's decision overruling her objection as one of the key issues in her motion for a new trial. Regarding defendant's claim that counsel failed to adequately interview the medical examiner and investigate the possibility that the victim's death was caused by something other than a gunshot wound, defense counsel testified that she received and reviewed the victim's medical records, she and her investigator met with the medical examiner prior to trial, and she performed legal research on the causation issue but did not hire an expert on the causation issue. The trial court concluded that defendant's *pro se* allegations of ineffectiveness lacked merit and denied his *pro se* motion.

¶ 17     Thereafter, the trial court denied the motion for a new trial filed by defense counsel. Specifically, the court rejected counsel's claim that the court's ruling to bar any reference to the wrongful death lawsuit was erroneous because the lawsuit did not provide the victim's relatives with a bias or motive to testify that defendant was the killer. After considering the evidence presented in aggravation and mitigation, the court sentenced defendant to a total of 55 years' imprisonment, which included a mandatory 25-year firearm enhancement.

¶ 18     On appeal, defendant argued that (1) the State failed to prove his guilt beyond a reasonable doubt, (2) the State made improper comments during closing argument, (3) the trial court failed to properly admonish prospective jurors of the relevant governing principles of law, and (4) the trial court improperly sentenced defendant to two counts of first degree murder. This court ordered that the mittimus be corrected to reflect a single conviction for first degree murder and affirmed the judgment of the trial court in all other respects. *People v. Smith*, 2012 IL App (1st) 100706-U.

¶ 19     In February 2013, defendant filed the instant *pro se* petition for postconviction relief. A police report and trial transcripts were attached to his petition. Relevant to this appeal, he argued that he was denied his right to effective assistance of trial and appellate counsel based on trial counsel's failure to (1) investigate the possibility of an alternate defense that the victim's death resulted from medical malpractice rather than a fatal gunshot wound, and (2) disqualify juror J.T. for lying under oath during *voir dire*. Defendant also included a motion for funds to retain an expert witness to substantiate his alternative cause of death claim.

¶ 20     After 90 days, defendant's petition was docketed for second-stage postconviction proceedings, and postconviction counsel was appointed to represent him. While this matter

remained pending for several years, postconviction counsel represented to the court that he was investigating the matter and was close to filing a supplemental postconviction petition. Ultimately, however, counsel elected not to file a supplemental petition. On January 23, 2019, counsel filed a Rule 651(c) certificate, attesting that he had consulted with defendant to ascertain his contentions of deprivations of constitutional rights, "obtained and examined the record of proceedings prior to, and including, the time the plea of guilty was entered, and sentencing in this case," and determined that a supplemental petition for postconviction relief was not necessary because defendant's *pro se* petition adequately set forth his claims of deprivation of his constitutional rights.

¶ 21    In June 2019, the State moved to dismiss the petition, arguing that defendant failed to make a substantial showing that his constitutional right to effective assistance of counsel was violated because counsel was not unreasonable for not seeking to disqualify juror J.T. from jury service for failing to disclose prior citations for speeding and driving on a suspended license. The State also argued that defendant failed to show that J.T.'s participation on the jury prejudiced defendant. Further, the State argued that defendant's claim that counsel failed to investigate and challenge the victim's cause of death was procedurally barred, conclusory and rebutted by the record.

¶ 22    On December 3, 2019, Defendant moved *pro se* for leave to file a petition for a *writ of habeas corpus ad testificandum*, requesting that he be brought into court for the hearing on the motion to dismiss and stating that he had important information to bring to the attention of the court and postconviction counsel.

¶ 23    On January 3, 2020, the court asked postconviction counsel about defendant's *pro se* motion, and postconviction counsel indicated that he had just been made aware of the motion that day. Postconviction counsel stated that he was prepared to argue the motion to dismiss and had been in constant contact with defendant but did not know of any newly discovered evidence or witnesses. Postconviction counsel informed the court that he would send a letter and initiate a phone call to defendant to ascertain the important information to which he was referring. The court continued the matter.

¶ 24    On February 21, 2020, postconviction counsel stated that defendant was alleging that there may be additional witnesses, but defendant did not have first-hand information. Specifically, defendant said he had received information from another inmate that another unknown inmate might have some valuable information on defendant's case. Postconviction counsel informed the court that he sent two letters to the known inmate and was waiting for a response. The court continued the matter.

¶ 25    On July 28, 2020, the court heard argument on the State's motion to dismiss. The State argued that the improper closing argument and *Zehr* admonishments issues were *res judicata*. The State also argued that the intervening causation issue was forfeited, conclusory, and rebutted by the record based on the medical examiner's testimony and the trial court's posttrial questioning of defense counsel regarding her investigative process.

¶ 26    In response, postconviction counsel stated that he had communicated with defendant about the existence of newly discovered evidence but nothing materialized. Postconviction counsel stated that the State correctly argued that the appellate court addressed defendant's claims

regarding improper closings arguments, the *Zehr* admonishments, and the causation issue. Postconviction counsel focused his argument on trial counsel's failure to disqualify juror J.T. for lying under oath during *voir dire*. The court continued the matter for ruling. In the interim, postconviction counsel prematurely filed a notice of appeal and incorrectly averred that defendant had received a 30-year prison sentence.

¶ 27    On April 30, 2021, the trial court granted the State's motion to dismiss defendant's petition, finding that his claims of ineffective assistance of counsel failed to make the required showing of a substantial deprivation of constitutional rights. Defendant timely appealed.

¶ 28                                        II. ANALYSIS

¶ 29    This appeal is governed by the framework set forth in the Post-Conviction Hearing Act (Act). See 725 ILCS 5/122-1 *et seq.* (West 2020). The Act provides a mechanism pursuant to which criminal defendants who have suffered a substantial violation of their constitutional rights at trial may obtain relief. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001).

¶ 30    Postconviction proceedings are not a substitute for a direct appeal; rather, the Act simply "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. As such, all issues that were previously decided on direct appeal are *res judicata* and all issues that could have been raised on direct appeal are forfeited. *People v. Allen*, 2015 IL 113135, ¶ 20. To prevail on a claim for postconviction relief filed pursuant to the Act, "a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 31    The Act provides for three distinct stages of review. *People v. Knapp*, 2020 IL 124992,

¶ 43. At the second stage, which is at issue in this appeal, counsel may be appointed to represent

the defendant, and the State may respond to the filing with an answer or a motion dismiss.

725 ILCS 5/122-2.1, 122-4, 122-5 (West 2020); *People v. Greer*, 212 Ill. 2d 192, 204 (2004). The

defendant bears the heightened burden of making a substantial showing of a constitutional

violation. *Allen*, 2015 IL 113135, ¶ 22. To ascertain whether the defendant has satisfied this

burden, the trial court will examine the legal sufficiency of the petition and any accompanying

documentation and ascertain "whether the allegations in the petition, liberally construed in favor

of the defendant and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*,

2016 IL 118123, ¶ 31. Although the court does not engage in any fact-finding or make credibility

determinations at this stage, the court need not accept as true facts that are "positively rebutted by

the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. Only if the defendant satisfies his burden

of making a substantial showing of a constitutional violation will the petition be advanced to a

third-stage evidentiary hearing. *Allen*, 2015 IL 113135, ¶ 22. Absent such a showing, the petition

will be dismissed. *People v. Bailey*, 2017 IL 121450, ¶ 18. The second-stage dismissal of a

postconviction petition is subject to *de novo* review. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 32                              A. Intervening Cause of Death

¶ 33    First, defendant argues that he made a substantial showing that trial counsel was ineffective

for failing to investigate whether the victim's death was the result of medical malpractice rather

than a fatal gunshot wound. Defendant contends that trial counsel failed to consult an independent

expert to determine the actual cause of the victim's death even though the victim sustained only

one gunshot wound to his hip, was conscious when he arrived at the hospital, and his family had a wrongful death lawsuit pending against the hospital that had treated him.

¶ 34 Where, as here, a defendant raises an ineffective assistance of trial counsel claim, he must satisfy the two-prong test promulgated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Specifically, the defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's unreasonable performance, the result of the underlying proceeding would have differed. *Id.*; *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). "To satisfy the deficient performance prong of *Strickland*, a defendant must show that counsel's performance was so inadequate 'that counsel was not functioning as "counsel" guaranteed by the sixth amendment.' " *Dupree*, 2018 IL 122307, ¶ 44 (quoting *People v. Evans*, 186 Ill. 2d 83, 93 (1999)). With respect to the prejudice prong, " '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' " *People v. Johnson*, 2021 IL 126291, ¶ 55 (quoting *Strickland*, 466 U.S. at 693). Instead, "[s]atisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. The defendant must satisfy both prongs of the *Strickland* test—deficient performance and prejudice—to prevail on an ineffective assistance of counsel claim and the failure to satisfy either prong invalidates his or her claim. *People v. Veach*, 2017 IL 120649, ¶ 30.

¶ 35 Generally, an attorney's strategic decisions, including which witnesses to call and which theory of defense to present, will not support an ineffective assistance of counsel claim. *People v. Little*, 2021 IL App (1st) 181984, ¶ 52. Although an attorney's strategic decisions are "virtually

unchallengeable" (*People v. Manning*, 241 Ill. 2d 319, 333 (2011)), an attorney nonetheless has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (*Strickland*, 466 U.S. at 691). An attorney's duty to investigate encompasses "the obligation to independently investigate any possible defenses." *People v. Domagala*, 2013 IL 113688, ¶ 38. "Lack of investigation is to be judged against a standard of reasonableness given all of the circumstances, 'applying a heavy measure of deference to counsel's judgments.' " *People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994) (quoting *Strickland*, 466 U.S. at 691). "Where the record establishes that counsel had reason to know, from an objective standpoint, that a possible defense *** was available, failure to investigate fully can constitute ineffective assistance of counsel." (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 38.

¶ 36    Because causation is an element of the offense of first degree murder, the existence of an intervening cause of death is a valid defense to a murder charge, which will relieve a defendant from criminal liability. *People v. Nelson*, 2020 IL App (1st) 151960, ¶¶ 48, 52. An intervening or superseding cause of death is one that is "completely unrelated to the acts of the defendant." *People v. Brackett*, 117 Ill. 2d 170, 176 (1987). Because a defendant's actions need not be the sole and immediate cause of the victim's death, however, the causation element is satisfied where there is evidence that the defendant's actions have contributed to a person's death. *Id*.; see also *People v. Nere*, 2018 IL 122566, ¶ 32 ("Illinois has consistently stated causation requirements in terms of contributing causation"). A defendant contributes to the victim's death where his conduct "set in motion a chain of events which culminate[] in [the victim's] death." *Brackett*, 117 Ill. 2d at 176.

¶ 37    As a general rule, when a defendant causes serious injury to another, " '[u]nskilled or improper medical treatment that aggravates a victim's preexisting condition or contributes to the victim's death *** does not constitute an intervening act.' " *Nelson*, 2020 IL App (1st) 151960, ¶ 123 (quoting *People v. Mars*, 2012 IL App (2d) 110695, ¶ 17); see also *People v. Gulliford*, 86 Ill. App. 3d 237, 241 (1980) ("Where a person inflicts upon another a dangerous wound which is calculated to endanger or destroy life, that person cannot exonerate himself from the consequences of his act by showing that his alleged victim's death resulted from unskillful or improper medical treatment.") Instead, only "[g]ross negligence or intentional medical maltreatment is considered an intervening cause and constitutes a valid defense to homicide." *Domagala*, 2013 IL 113688, ¶ 39. Moreover, in order for a defendant to escape criminal liability, the "alleged act or omission of a victim's physician must be disconnected from the culpable act of the defendant." *Mars*, 2012 IL App (2d) 110695, ¶ 29.

¶ 38    Here, defendant's allegation that trial counsel failed to adequately investigate the possibility that the victim's death was caused by something other than a fatal gunshot wound is rebutted by the record. Defendant raised this same ineffectiveness claim in his *pro se* posttrial motion, and the trial court conducted an inquiry into his claim. Trial counsel, in response to questioning, stated that she had received the victim's medical records and was aware that he remained hospitalized for approximately three months before his death. Counsel also stated that, prior to trial, she and her investigator met with the medical examiner, who had concluded that the victim died as a result of a gunshot wound to his hip and classified the manner of his death as a

homicide. Counsel then conducted legal research on the causation issue and did not hire an expert on the causation issue.

¶ 39    Trial counsel's decision not to challenge the issue of causation at trial was neither unreasonable nor prejudicial to defendant because his intervening causation claim is speculative and lacks legal merit. Although defendant suggests that trial counsel should have argued that the victim's "death was the result of an overdose of drugs used to put him in a coma, or some other cause related to medical malpractice," defendant acknowledges that "he does not have the necessary evidentiary support to fully substantiate this claim." Instead, the basis for his claim that the victim may have died as a result of some unspecified cause related to medical malpractice appears to be the facts that the victim did not die immediately after he was shot and the victim's family filed a civil suit against the hospital where he received emergency medical treatment to treat his gunshot wound. Neither basis, however, has merit.

¶ 40    Although the victim died approximately three months after defendant shot him in the hip, it is well-established that "[t]he length of time between the victim's initial injuries and later death has not been determinative of whether a defendant is liable for murder." *People v. Amigon*, 239 Ill. 2d 71, 79-80 (2010) (causation established where the victim died of pneumonia five years after defendant shot and paralyzed him because the victim's paralysis made him more susceptible to pneumonia and less capable of surviving it). Here, the medical examiner testified that when the victim arrived at the hospital following the shooting, he had blood collecting in his abdomen, which necessitated emergency surgery. The victim's medical records reflect that although he was stabilized following surgery, he "was not improving" and remained in a medically induced coma

until he died. There is no evidence that the legal chain of causation connecting the gunshot wound defendant inflicted on the victim to his death was broken simply because he did not immediately succumb to his injuries. See *People v. Robinson*, 199 Ill. App. 3d 494, 503-04 (1990) (the mere fact that the victim was initially stabilized after receiving medical treatment for the injuries that resulted when the defendant struck the victim with his car did not defeat a finding of legal causation where the victim succumbed to his injuries nearly two weeks later).

¶ 41    Defendant's reliance on the civil suit that the Goodwin family filed against the hospital to support his intervening cause of death claim is similarly unavailing. Although ordinary unskilled or improper medical treatment may support a medical malpractice claim, it will not constitute an intervening cause of death; rather, only grossly negligent or intentional malpractice that is disconnected from a defendant's conduct will constitute an intervening cause of death and relieve the defendant from criminal liability. Compare *Okic v. Fullerton Surgery Center, Ltd.*, 2019 IL App (1st) 181074, ¶ 70 (recognizing that to prevail on a medical malpractice claim, a plaintiff must establish the applicable standard of care, "the unskilled or negligent failure to comply with the applicable standard, and a resulting injury proximately caused by the defendant's want of skill or care." ) with *Mars*, 2012 IL App (2d) 110695, ¶ 17 (explaining that mere "[u]nskilled or improper medical treatment that aggravates a victim's preexisting condition or contributes to the victim's death *** does not constitute an intervening act unless the treatment is so bad that it can be classified as gross negligence or intentional malpractice").

¶ 42    Accordingly, the mere existence of a civil suit does not substantiate defendant's intervening cause of death claim where there is no evidence of any gross negligence or intentional malpractice

completely disconnected from defendant's actions. Instead, the record shows that the medical treatment the victim received was directly related to the gunshot wound defendant inflicted upon him and that defendant's criminal conduct set in motion the chain of events that ultimately culminated in the victim's death. See *Mars*, 2012 IL App (2d) 110695, ¶¶ 28, 30 (affirming the first-stage dismissal of the petitioner's postconviction petition alleging that appellate counsel was ineffective for failing to argue on direct appeal that the victim's death resulted from an intervening cause of death where his claim that the victim received negligent medical treatment was purely speculative and where the evidence showed that the defendant "set the chain of events into motion" that ultimately led to the victim's death). Defendant's speculative and unsubstantiated legal theory does not support an ineffective assistance of trial counsel claim. Trial counsel's failure to pursue a factually unsupported, legally meritless theory was neither unreasonable nor prejudicial to defendant. Defendant has thus failed to make a substantial showing that trial counsel's representation was constitutionally deficient.

¶ 43   Defendant's reliance on the supreme court's decision in *Domagala*, 2013 IL 113688, to support his ineffective assistance of trial counsel claim is misplaced because it is factually inapposite. In *Domagala*, the defendant was employed as a caregiver for the 84-year-old victim, who had recently suffered a stroke. The defendant was observed slapping the victim's face and pressing his forearm against the victim's throat. *Id*. ¶ 3. One of the victim's neighbors who observed the abuse called the paramedics. *Id*. ¶¶ 3-4. Although the victim did not complain of neck pain, paramedics immobilized his neck with a cervical collar and transported him to the hospital.

*Id*. ¶ 5. At the hospital, the victim had difficulty swallowing, and a swallow study was performed while the victim wore the cervical collar. *Id*. ¶¶ 7-10.

¶ 44    Based on the results of the study, the victim was given a feeding tube and was discharged to a nursing home with the feeding tube in place. *Id*. ¶¶ 12-13. The victim, however, pulled out the feeding tube several times while at the nursing home, which caused an infection that ultimately led to the victim's death. *Id*. ¶ 13. The medical examiner concluded that the victim died as a result of the infection and classified the manner of death as "accidental." *Id*. ¶ 14. The defendant was nonetheless charged with murder, and he was found guilty at the conclusion of a bench trial. *Id*. ¶¶ 19-21.

¶ 45    The defendant subsequently filed a postconviction petition arguing that his trial attorney was ineffective for failing to properly investigate and present expert testimony to support his contention that his actions did not cause the victim's death. Specifically, the defendant argued that the victim's death was caused by gross medical negligence, a supervening cause that was disconnected from any of the defendant's actions. *Id*. ¶ 24. The defendant's petition was supported by an affidavit completed by a medical professional who opined that the defendant's conduct— including slapping the victim and shoving the defendant's forearm against the victim's throat— was not life threatening and did not cause the victim to have difficulty swallowing. The doctor opined that the victim's difficulty swallowing likely resulted from his stroke and other pre-existing medical conditions. *Id*. ¶ 25. The doctor further averred that it was gross medical negligence to conduct a swallow test while the victim was wearing a cervical collar and to insert a feeding tube based on the result of that unreliable test. *Id*. The defendant's petition was also supported by an

affidavit completed by his trial attorney, who averred that he did not conduct any investigation into whether the victim's death was caused by gross medical negligence and that his "failure to investigate was not based on any trial strategy." *Id*. ¶ 26.

¶ 46 Although the petition was dismissed during second-stage postconviction proceedings, the supreme court reversed, finding that the allegations in the defendant's petition, which were supported by accompanying affidavits, made a substantial showing that his trial attorney's representation was deficient because there was "a viable defense to murder which was not presented at trial" that could have changed the outcome. *Id*. ¶¶ 42, 47. As such, the court remanded the matter for a third-stage evidentiary hearing. *Id*. ¶ 47.

¶ 47 The facts in *Domagala* differ from those at issue in this case. Unlike the attorney in *Domagala*, defense counsel in this case did investigate the issue of causation. Specifically, after receiving the victim's medical records and learning of his family's civil suit, trial counsel interviewed the medical examiner who conducted the victim's autopsy. Counsel also conducted legal research on the causation issue.

¶ 48 Furthermore, defendant's intervening cause of death theory lacks legal merit. The record reflects that defendant grievously injured the victim and defendant's criminal conduct set in motion the chain of events that led to the victim's death. The medical care the victim received was necessitated by, and a direct result of, the gunshot wound defendant inflicted upon him. Under such circumstances, the medical care at issue was not an intervening act relieving defendant from criminal culpability. See *Mars*, 2012 IL App (2d) 110695, ¶ 29 ("[F]or the defendant to escape liability, the alleged act or omission of a victim's physicians must be disconnected from the

culpable act of the defendant"). The circumstances at issue here differ significantly from those in *Domagala*, where the record showed that the injuries that the defendant inflicted on his victim were not life threatening and that the medical care that the victim received was likely related, in part, to complications that resulted from the victim's recent stroke, complications that were unrelated to the defendant's criminal conduct. Accordingly, defendant's reliance on *Domagala* to support his ineffective assistance of trial counsel claim is unavailing. He has failed to make a substantial showing that trial counsel's representation was constitutionally deficient.

¶ 49 Because defendant's underlying ineffective assistance of trial counsel claim lacks merit, he is unable to make the requisite showing that appellate counsel's failure to challenge the propriety of trial counsel's representation constituted ineffective assistance of counsel. "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Accordingly, a defendant raising an ineffective assistance of appellate counsel argument must show that counsel's failure to raise a particular claim on direct appeal was objectively unreasonable and that the omission prejudiced the defendant. *Id*. With respect to the first prong, it is well-established that "[a]ppellate counsel is not required to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues, which in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). With respect to the second prong, an appellate attorney's performance will be found to be prejudicial only if there is a reasonable probability that the result of the defendant's

appeal would have differed had counsel raised a meritorious issue on direct appeal. *Id*.; *People v. Robinson*, 217 Ill. 2d 43, 61 (2005).

¶ 50    Here, because defendant's underlying ineffective assistance of trial counsel claim lacks merit, appellate counsel cannot be found to be ineffective for failing to challenge trial counsel's representation on appeal. See *People v. Peeples*, 205 Ill. 2d 480, 514 (2002) ("if the underlying issue is not meritorious, defendant has suffered no prejudice from counsel's failure to raise that issue on appeal"). Defendant has thus failed to make a substantial showing of ineffective assistance of appellate counsel with respect to this issue.

¶ 51                              B. Failure to Remove a Juror

¶ 52    Defendant next argues that his petition made a substantial showing of constitutional error pertaining to the *voir dire* process. Specifically, he contends that he made a substantial showing that the trial court's failure to remove juror J.T. *sua sponte* during *voir dire* after she failed to disclose prior violations of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq*. (West 2020)), deprived defendant of his constitutional right to a fair trial. Defendant also argues that he made a substantial showing that trial counsel was ineffective for failing to request that J.T. be removed for cause and that appellate counsel was ineffective for failing to challenge the conduct of the trial court and trial counsel during the *voir dire* process.

¶ 53    "The constitutional right to a jury trial encompasses the right to an impartial jury." *People v. Rhinehart*, 2012 IL 111719, ¶ 16. Jurors in Illinois must be "[f]ree from all legal exception, of fair character, of approved integrity, of sound judgment, [and] well informed ***." 705 ILCS 305/2(a)(3) (West 2020). "The purpose of *voir dire* is to ascertain sufficient information about

prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath." *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993). "The primary responsibility of conducting the *voir dire* examination lies with the trial court and the manner and scope of such examination rests within the court's discretion." *People v. Terrell*, 185 Ill. 2d 467, 484 (1998). Although the trial court is afforded the discretion to remove a juror *sua sponte* for cause, the court has no affirmative duty to do so. *People v. Metcalfe*, 202 Ill. 2d 544, 557 (2002). A trial court will be found to have abused its discretion in the manner in which it conducted *voir dire* only if the record demonstrates that the court's conduct "thwarted the selection of an impartial jury." *Id.* at 560.

¶ 54    Here, the trial court commenced the *voir dire* process by addressing the venire and advising the prospective jurors that they would be asked a series of questions so that the attorneys could "make informed decisions as to [their] qualifications to sit as jurors." The questions would address their occupations, families, prior jury service, and any exposure to the criminal justice system, including whether they had ever been an accused, complainant, or witness in a criminal case. Later, the court explained that "an accused" in a criminal case is someone who has been arrested. The court emphasized that it was "most essential" that the prospective jurors' answers be "truthful and complete." Prospective jurors were then questioned in 14-person panels. After prospective jurors in each panel were questioned, several of them, depending on their answers, were questioned individually outside the presence of the other venire members.

¶ 55    Following individual questioning, the State advised the court and defense counsel of the results of the background checks it had performed on the venire members. Those results reflected that several prospective jurors had not answered truthfully when asked if they had ever been arrested or accused of a criminal offense. Regarding the first 14-person panel, one prospective juror failed to disclose that she had previously been arrested for misdemeanor battery and criminal trespass to a vehicle. A second had an undisclosed case pending. The State requested that both prospective jurors be dismissed for cause and defense counsel took "no position" on the issue. The trial court granted the State's requests and struck both prospective jurors for cause.

¶ 56    The same process was repeated for the second 14-person panel, which included J.T. Following group and individual questioning, the State advised the court and defense counsel that six prospective jurors on the second panel failed to disclose prior arrests and/or criminal convictions. Specifically, one prospective juror failed to disclose that she had been arrested and tried for criminal sexual assault and predatory criminal sexual assault. Another failed to disclose that she had twice been convicted of retail theft, as well as theft, domestic battery, and endangering the life of a child. A third prospective juror had an active bond forfeiture warrant issued in connection with a theft of labor services charge. A fourth failed to disclose a retail theft arrest. A fifth prospective juror failed to disclose arrests and/or convictions for battery, disorderly conduct, possession of a narcotics instrument, possession of a controlled substance, theft, as well as three instances of driving on a suspended license. A sixth prospective juror failed to disclose a DUI and two instances of driving on a suspended license. Finally, the State noted that J.T.'s background check revealed a speeding violation and one instance of driving on a revoked or suspended license.

After being advised of the results of the background checks, the court expressed frustration about the aforementioned omissions and remarked, "I'm not going to countenance liars on this jury." The State requested that all of the aforementioned prospective jurors, aside from J.T., be dismissed for cause due to their failure to fully disclose their criminal histories. Neither the defense nor the State, however, requested the trial court to dismiss J.T. for cause or sought to exercise a peremptory challenge to preclude her from serving on the jury.

¶ 57    Although the trial court did not *sua sponte* dismiss J.T. for cause due to her failure to disclose prior violations of the Illinois Vehicle Code, there is no evidence that the trial court's conduct during *voir dire* impeded the selection of a fair and impartial jury. First, it is not clear that J.T. "lied" by failing to disclose infractions for speeding and driving on a revoked or suspended license. The prospective jurors were asked to disclose prior arrests and/or convictions. A speeding infraction does not mandate an arrest. Moreover, it does not appear that all persons who drive on a suspended license are subject to arrest. See 625 ILCS 5/6-303 (a-7) (West 2020) (providing that persons whose licenses are suspended for certain reasons "shall receive a Uniform Traffic Citation from the law enforcement officer"). Nonetheless, even if J.T. had, in fact, been arrested for driving on a suspended license and failed to disclose the arrest, the trial court had no independent obligation to *sua sponte* dismiss her from jury service. See *Metcalfe*, 202 Ill. 2d at 557 (trial court has no duty to *sua sponte* remove a prospective juror for cause). Furthermore, there is no evidence that the trial court's failure to do so deprived defendant of his right to a fair trial. This court has repeatedly recognized that a juror's failure to disclose prior arrests or criminal charges does not constitute evidence that the juror is biased or otherwise unable to serve fairly as a juror. See *People*

*v. Dixon*, 409 Ill. App. 3d 915, 923 (2011) (summarily rejecting the defendant's argument that a prospective juror's failure to disclose prior arrests during *voir dire* was an indication that the juror was presumptively biased); *People v. Redmond*, 357 Ill. App. 3d 256, 259 (2005) (observing that a juror's initial failure to disclose a prior DUI charge "did not necessarily render him unfair or unable to serve as a juror").

¶ 58    Here, there is no evidence that J.T. was biased. To the contrary, the record reflects that during *voir dire*, she stated that she would give defendant a fair trial. She further affirmed that if defendant elected not to testify, she would not hold his decision against him. Although defendant argues that J.T.'s traffic infractions should have precluded her from jury service, he does not argue that those infractions or her failure to report them resulted in her being a biased juror. Instead, he argues that J.T.'s prior experience with gun violence purportedly rendered her biased against him. The record, however, also rebuts this claim. Although J.T. disclosed during *voir dire* that someone close to her had been the victim of a fatal shooting, she expressly denied that the crime would interfere with her ability to be fair and impartial.

¶ 59    Ultimately, there is no evidence that J.T. was a biased juror or that her inclusion on the jury prejudiced defendant. He has thus failed to make a substantial showing that the manner in which the trial court conducted *voir dire* and its failure to *sua sponte* dismiss J.T. from jury service deprived him of his right to a fair trial. See *Metcalfe*, 202 Ill. 2d at 560 (the manner in which the trial court conducts the *voir dire* process is only problematic if the court's conduct "thwarted the selection of an impartial jury"). As such, appellate counsel was not ineffective for failing to raise this non-meritorious issue on appeal. See *Peeples*, 205 Ill. 2d at 514.

¶ 60    As with other facets of representation, an attorney's decisions and actions during the jury selection process are considered matters of trial strategy, and as such, are "virtually unchallengeable." *Manning*, 241 Ill. 2d at 333. "Attorneys consider many factors in making their decisions about which jurors to challenge and which to accept" and their decisions are afforded deference. *Id*. at 335. Even if an attorney's decision not to challenge a prospective juror from serving on the jury can be construed as "questionable," that alone is "insufficient to find that counsel's conduct was deficient under *Strickland*." *Id*. at 336.

¶ 61    Here, the record shows that trial counsel strategically exercised challenges for cause and peremptory challenges throughout the *voir dire* process. In addition, when the State relayed the results of its background checks, defense counsel requested the trial court to subject some of the prospective jurors to additional questioning before ruling on the State's motions to dismiss them for cause. The record reflects that trial counsel was vigilant and diligent throughout the *voir dire* process. Accordingly, defendant fails to make a substantial showing that counsel's failure to seek to have the trial court dismiss J.T. for cause or use a peremptory challenge against her was an unreasonable trial strategy. Moreover, even if defendant could make that showing, his ineffective assistance of trial counsel claim necessarily fails because, as explained above, there is no evidence that J.T. was a biased juror or that her presence on the jury prejudiced him. Absent a showing of prejudice, defendant's ineffective assistance of trial counsel claim lacks merit. *Veach*, 2017 IL 120649, ¶ 30 (a successful ineffective assistance of counsel claim requires a showing of both deficient performance and prejudice). It thus follows that appellate counsel was not ineffective for failing to raise this non-meritorious issue on appeal. See *Peeples*, 205 Ill. 2d at 514.

¶ 62    Defendant has thus failed to make a substantial showing that the representation of either trial or appellate counsel with respect to the *voir dire* process was constitutionally deficient.

¶ 63                                    C. Rule 651(c) Certificate

¶ 64    In the alternative, defendant argues that this court should remand the matter for additional second-stage proceedings and with the appointment of new counsel because postconviction counsel failed to provide reasonable representation. Specifically, defendant argues that postconviction counsel filed a deficient certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and failed to certify that he examined the record of proceedings at trial. Defendant also argues that the record shows that postconviction counsel failed to substantially comply with Rule 651(c) because counsel failed to argue in support of defendant's intervening causation claim under the mistaken belief that the claim had already been litigated and was barred by *res judicata*, thereby indicating that postconviction counsel failed to read this court's ruling on defendant's direct appeal and the State's motion to dismiss. Defendant adds that postconviction counsel failed to shape the causation claim with readily available information about the wrongful death lawsuit and failed to pursue defendant's motion to appoint an independent expert to examine the causation issue. Further, defendant adds that counsel failed to amend the petition with defendant's affidavit about the new and important information because counsel mistakenly believed that hearsay was not admissible at a second-stage postconviction proceeding. Finally, defendant adds that counsel let defendant's "petition languish for years, seeking continuances, all the while representing to the court that he was about to amend the petition any day now, without ever amending or supplementing the petition."

¶ 65    Although criminal defendants are afforded the constitutional right to effective assistance of both trial and appellate counsel, there is no corresponding constitutional right to effective assistance of postconviction counsel. *People v. Johnson*, 2018 IL 122227, ¶ 16. Instead, the right to appointed counsel at the second-stage of postconviction review is "a matter of legislative grace." *People v. Custer*, 2019 IL 123339, ¶ 30. "The required quantum of assistance" required of postconviction counsel "has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id*. (quoting *Pendleton*, 223 Ill. 2d at 472). Rule 651(c) delineates the "sharply limit[ed]" obligations that a postconviction attorney must fulfil to provide reasonable assistance to a defendant. *Id*. ¶ 32. That rule, provides, in pertinent part as follows:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 66    Strict compliance with the rule is not required. Rather, postconviction counsel fulfils his or her obligations by substantially complying with the rule. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 30. The act of filing a 651(c) certificate creates a rebuttable presumption that the defendant received reasonable assistance of postconviction counsel. *Smith*, 2022 IL 126940, ¶ 29. Accordingly, where postconviction counsel files a certificate attesting that he or she has fulfilled

the obligations set forth in Rule 651(c), the defendant then bears the burden of demonstrating counsel's lack of substantial compliance. *Collins*, 2021 IL App (1st) 170597, ¶ 31. Postconviction counsel's compliance with Rule 651(c) is reviewed *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 67    Here, postconviction counsel's Rule 651(c) certificate provided as follows:

> "1. I have consulted with the petitioner, Frederick Smith, by phone, mail, electronic means or in person to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have obtained and examined the record of proceedings prior to, and including, the time the plea of guilty was entered, and sentencing in this case.
>
> 3. I have not prepared a Supplemental Petition for Post-Conviction Relief as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claim of deprivation of his constitutional rights."

¶ 68    Defendant argues that postconviction counsel's 651(c) certificate is facially defective because it states that he reviewed records pertaining to the "plea of guilty" even though no such records exist in this case since defendant never entered a guilty plea and instead proceeded by way of a jury trial. The State responds that postconviction counsel's reference to a guilty plea is a typographical error and does not establish that he failed to comply with his obligations pursuant to Rule 651(c). The State cites *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 14, for the proposition that the mere fact that postconviction counsel's certificate contained an error and referenced a different supreme court rule did not establish that counsel failed to comply with the requirements of Rule 651(c).

¶ 69    Even assuming that postconviction counsel's erroneous reference to a guilty plea renders the certificate noncompliant with Rule 651(c), the error is harmless because the record demonstrates that postconviction counsel fulfilled his obligations under the rule. *Smith*, 2022 IL 126940, ¶ 15 (quoting *People v. Lander*, 215 Ill. 2d 577, 584 (2005) ("the failure to file a certificate showing compliance with Rule 651(c) is harmless error if the record demonstrates that counsel adequately fulfilled the required duties"). Here, the transcripts of the hearing on the State's motion to dismiss show that postconviction counsel evidenced familiarity with the jury selection process, which supports the conclusion that the record that postconviction reviewed, was in fact, the trial record. In addition, the record reflects that counsel repeatedly advised the court that he had conferred with petitioner about his postconviction petition. Accordingly, not only was postconviction counsel's 651(c) certificate substantially compliant with the rule, but the record provides additional evidence that counsel complied with the responsibilities delineated therein.

¶ 70    Defendant's reliance on *People v. Carrizoza*, 2018 IL App (3d) 160051, to support his claim that postconviction counsel's certificate failed to demonstrate substantial compliance with Rule 651(c) is unavailing given the significant factual differences in that case. In *Carrizoza*, the defendant, who pled guilty to a narcotics charge after the trial court denied his motion to suppress, filed a petition for postconviction relief that challenged the propriety of the suppression ruling and alleged that law enforcement officials had lied and withheld evidence. *Id*. ¶¶ 3-7. Postconviction counsel was subsequently appointed and elected not to amend the defendant's filing. *Id*. ¶ 8. Instead, postconviction counsel filed a certificate in which he averred that he consulted with the defendant to ascertain his contentions of error pertaining to his guilty plea and sentence and had

examined the report of proceedings related to his client's guilty plea and sentencing. *Id*. However, instead of filing the certificate pursuant to Rule 651(c), postconviction counsel expressly filed the certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), which concerns the certificate counsel must file in an appeal by a defendant from a judgment entered on a plea of guilty. *Id*.

¶ 71    Although the trial court dismissed the petition, the appellate court reversed, finding that postconviction counsel had failed to file a certificate that substantially complied with Rule 651(c). *Id*. ¶¶ 14, 18. The court observed that the captioning of the certificate referenced Rule 604(d) and made no reference to Rule 651(c). *Id*. ¶ 14. Moreover, the court noted the substance of the certificate failed to demonstrate that postconviction counsel had substantially complied with Rule 651(c) and that the certificate had not simply been "misnamed." *Id*. ¶ 18. The court observed that because the defendant's constitutional violation claims included issues related to his suppression hearing, postconviction counsel would have needed to review transcripts of the suppression hearing to fulfil his Rule 651(c) obligations. However, postconviction counsel's certificate simply reflected that he had reviewed records of the plea proceedings. *Id*. Based on this omission, the court determined that postconviction counsel's certificate did not substantially comply with Rule 651(c). *Id*. The court further found that the record lacked explicit evidence that postconviction counsel had fulfilled Rule 651(c)'s mandate. *Id*. ¶ 19. Because neither the certificate nor the record indicated that postconviction counsel complied with his Rule 651(c) obligations, the court remanded the cause for additional second-stage postconviction proceedings. *Id*. ¶ 21.

¶ 72    The facts here, however, differ from those in *Carrizoza*. Unlike the certificate in *Carrizoza*, the certificate that postconviction counsel completed in this case was explicitly filed "in accordance with Illinois Supreme Court Rule 651(c)." Although postconviction counsel's certificate concerning his review of the record of proceedings erroneously referred to guilty plea proceedings, counsel clearly knew that this case involved a jury trial rather than a guilty plea because counsel's argument responding to the State's motion to dismiss defendant's postconviction petition focused on the issue concerning the failure to remove juror J.T. Also, counsel's reference to the propriety of the closing arguments further demonstrates that he knew this case involved a jury trial rather than a guilty plea. Thus, unlike the situation in *Carrizoza*, where counsel's certificate specified that he only reviewed a portion of the record at issue, here, the substance of the certificate and the record itself indicate that counsel reviewed all necessary portions of the record to fulfill his obligations under the rule.

¶ 73    Defendant argues that he has rebutted any presumption that postconviction counsel fulfilled his Rule 651(c) responsibilities by citing several examples in the record to demonstrate counsel's unreasonable representation. First, defendant challenges postconviction counsel's representation during the hearing on the State's motion to dismiss and his failure to address the substantive merit of defendant's causation claim. Defendant observes that counsel mistakenly stated that defendant's causation claim had been addressed on direct appeal and was thus barred by *res judicata*. Defendant argues that counsel's misstatement shows that he failed to review the State's motion to dismiss and the direct appeal proceedings and thus failed to provide defendant with the reasonable assistance to which he was entitled.

¶ 74    In support, defendant cites *People v. Meyers*, 386 Ill. App. 3d 860 (2008), where the court concluded that postconviction counsel failed to comply with his obligations pursuant to Rule 651(c) because he did not file a certificate, the record did not reflect that he had read the appellate briefs, and counsel expressly admitted that he did not read the disposition the appellate court issued on direct appeal. *Id.* at 865-66. Here, in contrast, postconviction counsel's misstatement that the appellate court addressed the intervening causation issue does not constitute affirmative evidence that he failed to review the appellate proceedings or the State's motion to dismiss. In context, postconviction counsel's misstatement indicates that he may have been referring to the trial court's questioning of defense trial counsel regarding defendant's *pro se* posttrial motion, which had raised the causation issue. Postconviction counsel referenced a specific page of the State's motion during the hearing on the motion to dismiss, which indicates that counsel did review the filing. Counsel also correctly observed that other claims included in defendant's *pro se* petition had been resolved on a direct appeal, including the propriety of the trial court's *Zehr* admonishments and the State's closing argument. Because the record rebuts defendant's claim that postconviction counsel failed to conduct an adequate review of the record, defendant's reliance on *Meyers* is misplaced.

¶ 75    Defendant also challenges counsel's failure to "properly shape" defendant's causation claim. Specifically, defendant argues that counsel should have attached a copy of the civil suit that the victim's family filed against the treating hospital. Defendant's claim, however, lacks merit because a postconviction counsel's duty to amend does not require counsel to amend a non-meritorious claim. Rule 651(c), by its express terms, requires postconviction counsel to make "any

amendments *** that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Accordingly, "there is no requirement that that post-conviction counsel *must* amend a defendant's *pro se* petition." (Emphasis in original.) *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991); see also *Bass*, 2018 IL App (1st) 152650, ¶ 20 ("[I]f the lawyer appointed to represent a postconviction petitioner determines, after fulfilling his or her obligations under Rule 651(c), that the petition cannot be amended, defendant has received the reasonable assistance of counsel the Act contemplates and his entitlement to the assistance of counsel is at an end.").

¶ 76 Moreover, Rule 651(c) imposes no duty on postconviction counsel to amend frivolous and non-meritorious claims. See *Greer*, 212 Ill. 2d at 205 ("Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule."). As explained previously, defendant's intervening causation claim lacks legal merit because his act of shooting the victim set in motion the chain of events that led to the victim's death. Postconviction counsel was thus under no obligation to amend defendant's petition to include a copy of the civil suit to bolster defendant's unmeritorious intervening causation claim, and postconviction counsel's failure to do so was not unreasonable.

¶ 77 Defendant also argues that postconviction counsel should have secured a ruling on his motion requesting funds to retain an unnamed expert witness to support his intervening cause of death claim and that postconviction counsel's failure to do so demonstrates that counsel failed to provide him with reasonable assistance. The law, however, is clear that postconviction counsel is

not obligated " 'to engage in a generalized fishing expedition in search of support for claims raised in a petition.' " *People v. Williams*, 186 Ill. 2d 55, 61 (1999) (quoting *People v. Johnson*, 164 Ill. 2d 227, 247-48 (1993)). Because defendant's intervening causation claim is unfounded, postconviction counsel's failure to pursue it further was not unreasonable.

¶ 78    Defendant next challenges counsel's failure to amend his petition to include an affidavit from defendant that specified the "important information" that had been brought to defendant's attention prior to the hearing on the State's motion to dismiss. Defendant's claim lacks merit because postconviction counsel informed the trial court that he had investigated "the existence of any newly discovered evidence in the form of witnesses or exculpatory evidence, [that] was not previously available and nothing materialized." Postconviction counsel's failure to amend the petition to include defendant's affidavit referencing evidence that never materialized following counsel's investigation was neither required by Rule 651(c) nor unreasonable. See *Custer*, 2019 IL 123339, ¶ 38 (explaining that Rule 651(c)'s "requirements do not include bolstering every claim presented in a *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position").

¶ 79    Finally, defendant challenges postconviction counsel's delay in filing his 651(c) certificate, observing that counsel represented him for several years before filing the document. Although this court has expressed disfavor toward lengthy second-stage proceedings (see *People v. Kelly*, 2012 IL App (1st) 101521, ¶ 40), Rule 651(c) by its express terms imposes no time frame pursuant to which postconviction counsel must file a certificate. When construing postconviction counsel's Rule 651(c)'s obligations, the Illinois Supreme Court has declined to impose obligations other than

those explicitly set forth in the plain language of the rule. See *Smith*, 2022 IL 126940, ¶ 32 (construing the plain language of the rule and concluding that it "imposes no timeframe in terms of how soon before the hearing on the State's motion to dismiss the certificate must be filed"); *People v. Turner*, 187 Ill. 2d 406, 411 (1999) (construing the plain language of the rule and concluding that it did not require an appointed attorney to consult with a petitioner a certain number of times).

¶ 80    Defendant cites no authority in which a postconviction attorney's performance was found to be unreasonable solely due to the length of time it took counsel to amend a *pro se* petition or file a 651(c) certificate. Based on our conclusion that none of defendant's other claims pertaining to counsel's lack of purported reasonable assistance have merit, the length of time counsel took to file the certificate does not, standing alone, provide this court with a basis to find postconviction counsel's representation unreasonable, particularly where counsel repeatedly referenced the fact that he was in regular contact with defendant during the delay. Similarly, the mere fact that postconviction counsel filed a premature notice of appeal does not support a finding of unreasonable representation because other facets of counsel's representation were reasonable and a timely notice of appeal was ultimately filed, which preserved defendant's appellate rights. *Cf. People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 35 (finding that postconviction counsel's representation was unreasonable in a number of respects, including counsel's failure to file a proper notice of appeal).

¶ 81    Ultimately, none of defendant's examples of postconviction counsel's unreasonable representation have merit. Counsel filed a substantially compliant 651(c) certificate, and defendant

has failed to rebut the presumption that counsel failed to provide him with the requisite reasonable level of representation to which he was entitled. Even if counsel's certificate failed to comply with Rule 651(c), the error is harmless because the record demonstrates that counsel fulfilled his obligations under the rule. Accordingly, we deny defendant's request to remand the matter for additional second-stage postconviction proceedings and the appointment of new postconviction counsel.

¶ 82                                    III. CONCLUSION

¶ 83     For the foregoing reasons, we affirm the judgment of the circuit court that dismissed defendant's postconviction petition at the second stage of the postconviction proceedings.

¶ 84     Affirmed.